**STATE of Missouri, Respondent,**

v.

**James CHALK, Appellant.**

No. 70865.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 22, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1997.

Application to Transfer Denied
Sept. 30, 1997.

---

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Andrew J. Lay, Asst. Atty. Gen., St. Louis, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

The defendant was convicted of murder in the first degree (Sec. 565.020, RSMo 1994) and armed criminal action (Sec. 571.015, RSMo 1994), receiving sentences of life imprisonment without probation or parole and 30 years concurrently. Because he does not challenge the sufficiency of the evidence on this appeal we do not need to set out the facts in detail, and simply state that three eyewitnesses identified defendant as the gunman who shot Shawn Meeks fatally at about 5 P.M. on March 9, 1995. We find no merit in the four points he raises, and so affirm.

### 1. *Batson*

The venire contained six jurors who were identified as Afro–American. Each side used three of its six peremptory challenges to remove Afro–Americans. The defendant claims that the state has not demonstrated neutral, non-pretextual reasons for striking the three.

One juror was struck because the prosecutor thought she had difficulty in understanding the proceedings and might be hard of hearing. This reason apparently satisfies the defense. A second was removed because he was young, had no previous jury service, and, in response to questioning, said that he had not been a crime victim. The third challenged juror had these characteristics and also, according to counsel, assumed a hostile posture toward her with arms folded. The prosecutor told the court that, in her experience, young persons without jury service were not good jurors for the prosecution.

■ The reasons stated are race-neutral. There is no indication that other jurors with similar characteristics were not struck, whereas the prosecutor pointed out that she had also struck young white persons without jury experience from the panel. The state is not obliged to persuade us that the reasons assigned are sound reasons, and may make use of "hunches" so long as they are not pretextual. The trial judge may assess the credibility of the prosecutor in weighing the explanations given. The defendant does not demonstrate *Batson* error. *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992).

### 2. Counsel's Representation of Prosecution Witness

■ Ten days before the trial date, which had been specially set, defense counsel, a public defender, moved for leave to withdraw because she had represented Michael Johnson, an important prosecution witness, in a bargained plea to a totally unrelated drug trafficking offense. The evidence shows that, after Johnson had given a statement to the police incriminating the defendant, he was arrested on the drug charge. On August 5, 1995 the defendant's trial counsel represented him on a plea of guilty which was disposed of by a shock probation jail term, a suspended imposition of sentence, and a long term of probation.

■ The trial judge heard statements of defense counsel, in which she indicated that her contact with Johnson had been minimal. The case is not controlled by *State v. Risinger*, 546 S.W.2d 563, 564 (Mo.App.1977), in which a public defender represented both the defendant on trial and also a prosecution witness in charges arising out of the same transaction. Nor is relief dictated by *Gordon v. State*, 684 S.W.2d 888 (Mo.App.1985), in which a witness had expressly agreed to testify against the defendant as a part of a plea bargain disposing of an unrelated charge. The trial judge was not obliged to permit counsel to withdraw under the circumstances shown. It is proper to consider the time of the motion and its effect on an apparently firm trial setting. *See State v.*

*Novak*, 949 S.W.2d 168, 170 (Mo.App.E.D. 1997).

### 3. Cross Examination about Plea Bargain

■ Michael Johnson, in an interview with the police shortly after the shooting, said that he was unable to identify the gunman. Later the same evening police officers again interviewed Johnson, pointing to some inconsistencies in his earlier statement, and he identified the defendant, whom he knew, as the gunman.

As has been said earlier, Johnson was arrested several days after the shooting, and entered into a bargained plea on which judgment was entered. Defense counsel alleged that, after his arrest, Johnson offered to cooperate with the police as a part of his plea bargain, and sought to cross examine him about the plea bargain. The court sustained the prosecutor's motion in limine to preclude such questioning and adhered to the ruling when objection was made during trial.

The defendant now argues that he should have been allowed to impeach Johnson by showing his offer to cooperate with the police. The point might have merit if, at the time he testified, the plea bargain had not been consummated, because the jury might believe that he would be reluctant to displease the police and the prosecutors by his trial testimony. *See Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974).

Here, however, Johnson was past the point of jeopardy so long as he did not violate the terms of his probation, and he gave no testimony which went beyond his statement made the evening of the offense. In *Davis*, by contrast, the witness was on probation when he first spoke to the police. *Id.* at 311, 94 S.Ct. at 1107. The court was also entitled to consider the strength of the prosecution's case, in which two other eyewitnesses testified. We perceive no error under the circumstances. *See Davis*, 415 U.S. at 321, 94 S.Ct. at 1112 (Stewart, J. concurring).

### 4. Alibi Rebuttal Disclosure

The defendant gave timely notice that Whinsome Owens would testify as follows:

The defendant on March 9, 1995 picked her up from work at 4:30 P.M. where they proceeded to the 5800 block of Cote Brilliante to pick up their children from the baby sitters. They then proceeded to her residence where they remained all evening.

There is no indication that the defense advised the prosecution prior to trial as to where Owens was employed, or that the prosecutor asked. On the morning of trial the defense endorsed Brenda Robertson as an additional witness.

Owens testified in accordance with the proffer, saying that she was employed as a maid at Embassy Suites and that she got off work at 4:30 P.M. on March 9. Robertson testified that she was Owens' supervisor, and that Owens had worked on that day as indicated. She said that she had checked the records to make sure that this was so. The prosecutor presented records from Embassy Suites during cross examination and questioned Robertson about these records. The defendant objected to the use of these records on the ground that they had not been previously disclosed. The court overruled the objection, pointing out that the prosecutor had no occasion to seek out the records until Robertson was presented as a witness and volunteered that she had checked the employment records. The records showed that Robertson did not work at all on March 9, 1995, and that Owens had worked until 5:30 P.M. on that day. Robertson confirmed that the records so demonstrated.

■ The defendant argues that the prosecution was obliged to disclose the alibi rebuttal evidence, citing *Wardius v. Oregon*, 412 U.S. 470, 472–473, 93 S.Ct. 2208, 2210–2211, 37 L.Ed.2d 82 (1973) and Missouri authorities expounding the teachings of that case. We disagree, in the context of this case.

■ The records impeached Robertson, and therefore diminished the force of her corroboration of Owens. This circumstance does not mandate any disclosure, because prior disclosure is not required of rebuttal evidence which simply impeaches a witness without directly impacting the alibi. See the comprehensive opinion in *State v. Evans*, 896 S.W.2d 56 (Mo.App.1995), citing cases from Missouri and other jurisdictions.

The records, however, completely refuted Owens' testimony, which was the only alibi evidence offered. If she was working at the time of the shooting she could not have been present with the defendant for half an hour beforehand and for several hours afterward. Had the prosecution had the records in hand before the trial it would have taken a serious risk by not disclosing them. Under the situation shown by this record, however, there is no reversible error.

The records were first mentioned by Robertson, a defense witness, who brought them up without having them in front of her. No rule of procedure should preclude the prosecution from obtaining and offering the actual records after she brought them into the case. The defense simply sought to exclude testimony about the records rather than seeking mistrial, brief continuance, or other relief. The trial judge pointed out that the records were easily accessible to the defense before trial, rejecting the suggestion that the prosecutor was at fault in not inquiring before trial about Owens' place of employment and seeking records of her employment. There is no substantial indication of prejudice. Owens explained her testimony by saying that sometimes she forgot to punch out when she left work and that other employees might correct the oversight by entering an assumed time of leaving. Had the defense had the records it might have anticipated questions about when she finished work by giving this explanation, but her doing so would certainly dilute her testimony. In assessing trial error, moreover, it is appropriate to consider the strength of the prosecution's case. The three eyewitnesses presented a very strong showing.

The judgment is affirmed.

AHRENS, C.J., and CRANDALL, J., concur.