

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101545 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of Saint Louis |
| vs. | ) | |
| | ) | Honorable Michael K. Mullen |
| CORAN NETTLES, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 1, 2015 |

### Introduction

Appellant Coran Nettles ("Nettles") appeals from the judgment of the trial court entered after a jury verdict. The jury convicted Nettles of first-degree murder, first-degree robbery, and two associated counts of armed criminal action. On appeal, Nettles first argues that the trial court erred when it failed to sua sponte disqualify defense counsel due to a conflict of interest. Defense counsel previously represented one of Nettles's co-defendants who pled guilty and became a material State witness in the case. Nettles also argues that the trial court erred in precluding defense counsel from questioning the material witness about an uncharged incident in which the witness allegedly assaulted his cousin with a baseball bat. Although the record suggests Nettles may have legitimate concerns as to his counsel's conflict of interest, allegations of error relating to conflict of interest generally are not cognizable on direct appeal and must be raised in a motion for post-conviction relief. Accordingly, we deny Nettles's first point on

appeal. With regard to his second point on appeal, Nettles did not present the trial court with an offer of proof, and thereby waived his objection to the trial court's ruling. Because we find no substantial grounds to believe that a manifest injustice or miscarriage of justice occurred by the trial court's ruling limiting cross-examination, we decline to exercise plain-error review and deny Nettles's second point on appeal. The judgment of the trial court is affirmed.

Factual and Procedural History

The State accused Nettles, Bryan Shelton ("Shelton"), and Kendall White ("White") of acting with one another to beat Andre Hathaway ("Victim") to death. Shelton pled guilty to second-degree murder, first-degree robbery, and two associated counts of armed criminal action in exchange for his testimony against White and Nettles. Nettles was charged with first-degree murder, first-degree robbery, and two associated counts of armed criminal action. White was charged and tried alongside Nettles. White offered an alibi at trial and was acquitted by the jury. Nettles was convicted on all four counts.

The evidence in the light most favorable to the verdict was as follows. Nettles and Shelton previously had purchased drugs from Victim. On the evening of June 7, 2011, Nettles and Shelton asked Victim to come over to sell them heroin. When Hathaway arrived, Nettles and Hathaway started arguing. Either Shelton or Nettles hit Hathaway in the head with a bedpost and also dropped a ten-pound barbell on Hathaway's head. The body was disposed of and the blood-stained carpet from the house was removed. The next day, police found Hathaway's body floating in a creek. An investigation led police to Nettles, Shelton, and White.

Nettles hired defense attorney Robert Taaffe ("Taaffe") to represent him at trial. The trial court heard motions in limine after jury selection but before opening statements. The State filed a motion in limine seeking to prohibit Taaffe from eliciting testimony from Shelton (now a prosecution witness) about an uncharged act of violence in which Shelton allegedly assaulted his

2

cousin with a baseball bat. During the hearing on the motion in limine, Taaffe informed the trial court that he had previously represented Shelton on the criminal charges relating to the baseball-bat assault on Shelton's cousin. Taaffe told the trial court:

> Well, [Shelton's] case was dismissed at grand jury. And let me just say this. Everybody was—[Nettles] and Mr. White was telling me about this particular arrest and where he had been. Bryan Shelton had been accused of beating his—basically his—RonRon, his cousin, up with a baseball bat.

> When they first mentioned it to me, I had no memory of, you know, representing Bryan Shelton on this roughly four years ago. I had no memory of it. It was only when I went to my office and I was reviewing some of the statements that Bryan Shelton gave to the police, and in his first statement he asserts his rights to an attorney and he's requesting me.

> So I thought, well, maybe I should check. I checked this guy and, as it turns out, I did represent him on a probation violation back in 2010. And we did represent him on this assault first, armed criminal action that he was charged with that was ultimately dismissed because—because of the—I guess the person that was—the alleged victim never showed up and testified in the grand jury.

> So I'm going to have this information. I don't intend on using it, unless Mr. Shelton says something that would open the door to it.

The trial court sustained the State's motion in limine and instructed Taaffe to approach the bench before asking any questions about Shelton's prior assault at trial.

During trial, the State conducted a direct examination of Shelton. Shelton testified that he was merely standing in the room when Victim was being beaten. Shelton stated, "I was kind of stunned, so I was looking for a while, I was just standing there. Standing like in shock at what just happened." On cross-examination, Taaffe inquired into this statement with Shelton:

> Taaffe: You said you were in shock?

> Shelton: Yes, sir.

> Taaffe: So when [White] hit [Victim], you were in shock? And then [Nettles] dropped the weight, you're in shock at that point.

> Shelton: I was in shock from ... I was in shock when the weight hit his head.

3

The State objected to defense counsel's line of questioning claiming that Taaffe was "clearly trying to open the door" in an attempt to interrogate Shelton about his prior baseball-bat assault of his cousin. The State continued at sidebar:

> [Taaffe] shouldn't be presenting [the information about Shelton's assault of his cousin with a baseball bat] in the first place. When he brought [this information] to your attention, he should have been removed from the case.
>
> Now he wants to go into something he has privileged or confidential information about, which is ridiculous.

Taaffe argued that Shelton opened the door to cross-examination about his prior assault charge by testifying he was "shocked" that Nettles and White were beating Victim with a bedpost and a barbell. The trial court sustained the State's objection, explaining that Victim and Shelton were friends, which could explain why Shelton was shocked. The trial court prohibited Taaffe from questioning Shelton further on the topic. Taaffe did not submit an offer of proof of the testimony Taaffe anticipated would be elicited through his continued cross-examination of Shelton. Subsequently, the jury returned a verdict convicting Nettles on all four counts.

The trial court later held a sentencing hearing. At the hearing, the trial court denied Nettles's motion for new trial, which alleged the trial court erred by precluding defense counsel from questioning Shelton about his prior assault with a baseball bat. Nettles attempted to raise Taaffe's deficient performance at trial at the beginning of the hearing; the trial court told Nettles he could address his concerns after sentencing. The trial court sentenced Nettles to life without the possibility of parole for first-degree murder and to life on the remaining three counts. All sentences ran concurrently.

During post-sentencing questioning, the trial court questioned Nettles about the assistance he had received from Taaffe. Nettles complained that Taaffe was unable to find any information about Shelton's assault with a baseball bat. Nettles said he told Taaffe about

4

Shelton's assault numerous times in an attempt to provide information that Taaffe could use to impeach Shelton. The trial court pointed out that it had prevented Taaffe from asking about that incident because evidence of the alleged assault was not relevant. Nettles further maintained that he would not have hired Taaffe as his defense counsel had he known Taaffe previously represented Shelton. Nettles did not learn that Taaffe previously represented Shelton until Taaffe told him at trial, after jury selection had occurred. By that time, Nettles said, "I was locked into my trial and I had paid all my money." Despite Nettles's complaints, the trial court found that Taaffe performed in a reasonably competent, professional manner. This appeal follows.

## Points on Appeal

Nettles presents two points on appeal. First, Nettles argues that the trial court erred in failing to sua sponte disqualify Taaffe due to Taaffe's conflict of interest. Specifically, Nettles posits that Taaffe's prior representation of Shelton, a former co-defendant and key prosecution witness against Nettles, created a conflict of interest that violated Nettles's right to effective assistance of counsel. Second, Nettles contends that the trial court erred by prohibiting Taaffe from cross-examining Shelton about Shelton's prior assault with a baseball bat. Specifically, Nettles asserts that Shelton's prior assault with a baseball bat was relevant and admissible as impeachment evidence because the prosecution had opened the door to the evidence by eliciting testimony on direct examination that Shelton was "shocked" after seeing Victim being beaten with a bedpost. Nettles avers that Shelton's testimony raised an inference that Shelton was merely a bystander in the crime, which Nettles had the right to rebut.

## Discussion

### I. Point One—Conflict of Interest

Nettles claims that the trial court erred in failing to sua sponte disqualify Taaffe from representing Nettles because Taaffe previously represented Shelton, a critical prosecution

5

witness. Nettles argues that the trial court's error violated his Sixth Amendment constitutional right to be represented by conflict-free counsel.

We begin our analysis by recognizing the importance of the right to conflict-free counsel and the seriousness of the allegation of conflict raised by Nettles. See Holloway v. Arkansas, 435 U.S. 475, 489 (1978) (assistance of counsel under the Sixth Amendment is one of the rights basic to a fair trial). The record before us shows that Taaffe admittedly represented a critical state witness on a prior charge where the witness allegedly beat another person with a baseball bat. Here, Shelton was charged along with Nettles and White for the beating death of Victim, who was beaten with a wooden bedpost. Shelton pled guilty and testified against Nettles and White. Taaffe sought to impeach Shelton by cross-examining him about his alleged prior assault on his cousin with a baseball bat, presumably with confidential information Taaffe had gained during his prior attorney-client legal representation of Shelton. Nettles's claim of his defense counsel's successive representation raises very serious concerns as to the representation Nettles received by Taaffe and the potential limitations of that representation due to Taaffe's prior attorney-client relationship with Shelton.

Successive representation occurs when an attorney represents a defendant and has previously represented co-defendants or trial witnesses, as Taaffe did here. United States v. Shepard, 675 F.2d 977, 979 (8th Cir. 1982). The most common example of an actual conflict of interest arising from successive representation "occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." Moss v. United States, 323 F.3d 445, 460 (6th Cir. 2003). In such cases, as here, a significant risk exists that Taaffe's representation of Nettles may have been materially limited by Taaffe's responsibilities of confidentiality to Shelton, his former client. See Mo. R. Prof'l Conduct 4-1.6 (Confidentiality of

6

Information); 4-1.7 (Conflict of Interest: Current Clients); 4-1.9 (Duties to Former Clients). The record suggests a very real possibility that Nettles's defense counsel had an actual conflict of interest in representing Nettles at the time of trial.

Despite our concerns that Taaffe's prior representation of Shelton may have tainted his representation of Nettles, and denied Nettles his constitutional rights to assistance of counsel guaranteed under the Sixth Amendment, we recognize cogent and instructive Missouri authority that requires Nettles to assert this claim in a post-conviction motion rather than on direct appeal.

A.   Missouri law precludes Nettles from asserting his conflict of interest claim on direct appeal.

Although Nettles may have raised meritorious arguments at his sentencing hearing that Taaffe had a conflict of interest that adversely impacted Taaffe's representation of Nettles, Missouri law recognizes that this claim is not cognizable on direct appeal. In State v. Whitley, Appellant's trial counsel had previously represented the testifying victim, which was held to establish a conflict of interest. 408 S.W.3d 305, 309–10 (Mo. App. E.D. 2013). The State moved to disqualify defense counsel and the trial court denied the motion to disqualify. Id. at 310. This Court held that—to the extent Appellant was alleging ineffective assistance—the claim was not cognizable on direct appeal despite being framed as trial-court error. Id.[1]

Similarly, in State v. Kezer, Appellant claimed on direct appeal that the trial court erred in denying the State's motion to disqualify and allowing defense counsel to represent him because it violated Appellant's right to conflict-free and effective counsel. 918 S.W.2d 874, 876–77 (Mo. App. E.D. 1996). The State accused Appellant's attorney of improperly obtaining

---

[1] The Whitley Court also declined to exercise plain-error review to the extent Appellant alleged plain error on the part of the trial court. Id. at 310. This statement seems to leave open the possibility of Nettles asserting plain error on the part of the trial court for failure to inquire into Taaffe's potential conflict of interest. For the reasons stated below, we believe Nettles's claim is actually one of ineffective assistance, which should be raised in a post-conviction motion.

statements from witnesses who recanted previous statements. Id. at 877. These witnesses

alleged that Appellant's attorney had threatened them into changing their statements. Id. The

State moved to disqualify counsel, and that motion was denied. Id. On direct appeal, Appellant

framed the conflict issue as one of trial-court error. Id. Appellant claimed the trial court erred in

not disqualifying his counsel because of counsel's "conflicting roles": (1) defending Appellant

and (2) justifying counsel's conduct as legal and ethical. Id. This Court recognized that

Appellant was, in effect, alleging ineffective assistance of counsel. Id. In denying appellant's

claim, we held that claims of ineffective assistance of counsel cannot be raised on direct appeal;

the exclusive remedy is a Rule 29.15[2] motion. Id.; see also State v. Wheat, 775 S.W.2d 155, 157

(Mo. banc 1989) (recognizing that the plain language of Rule 29.15 provides that it is the

"exclusive procedure" for relief on the claims enumerated, including ineffective assistance),

overruled on other grounds by Joy v. Morrison, 254 S.W.3d 885, 888–89 (Mo. banc 2008).

The Western District has also held that allegations of trial-court error relating to a defense

counsel's conflict of interest are to be treated as claims of ineffective assistance of counsel not

cognizable on direct appeal. In State v. Celis-Garcia, Appellant claimed prejudice from the trial

court's admission of evidence on the ground that Appellant was represented by counsel having a

conflict of interest. 420 S.W.3d 723, 730 (Mo. App. W.D. 2014). Counsel represented both

Appellant and appellant's co-defendant at a deposition and at the first trial. Id. Appellant argued

that counsel could not take a position in favor of Appellant but adverse to the co-defendant

because counsel represented both parties. Id. Thus, Appellant asserted that counsel abandoned

his duty of loyalty. Id. The Court held that, in reality, Appellant's conflict-of-interest claim

related "almost exclusively to constitutional notions of fair representation under the Sixth

---

[2] All rule references are to Mo. R. Crim. P. (2014).

8

Amendment to the U.S. Constitution and the Rules of Professional Responsibility." Id. at 731. Thus, to the extent the claim was for ineffective assistance of counsel due to a conflict, the claim was not cognizable on direct appeal. Id.

The claim Nettles now asserts is also based entirely on the notions of fair representation under the Sixth Amendment and the Rules of Professional Conduct. Though framed as trial-court error, in reality, Nettles asserts a claim of ineffective assistance of counsel. Missouri courts have held that a claim of ineffective assistance of counsel, even if compelling, is not cognizable on direct appeal.

B.    Cuyler v. Sullivan and Wood v. Georgia do not transform Nettles's claim into one cognizable on direct appeal.

Nettles relies on the United States Supreme Court cases of Cuyler v. Sullivan[3] and Wood v. Georgia[4] to assert that the *trial court erred* by ignoring its duty to inquire into Taaffe's potential conflict of interest. Nettles claims that because he asserts trial-court error, rather than ineffective assistance of counsel, his claim is cognizable on direct appeal. While we are sympathetic to Nettles's argument, we are not persuaded that these Supreme Court cases contravene Missouri case law precluding consideration of Nettles's conflict of interest claim on direct appeal.

The Supreme Court has made clear that the conflict-of-interest issues raised in both Cuyler and Wood fall within the application of the Strickland v. Washington[5] framework for proving ineffective assistance of counsel. Mickens v. Taylor, 535 U.S. 162, 166–74 (2002). The Strickland Court held that the "benchmark" for judging whether counsel is ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that

---

[3] 446 U.S. 335 (1980).
[4] 450 U.S. 261 (1981).
[5] 466 U.S. 668 (1984).

the trial cannot be relied on as having produced a just result." 466 U.S. at 686. To meet the standard for ineffective assistance of counsel, the Strickland Court explained that the movant must show by a preponderance of the evidence: (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) that counsel's deficient performance prejudiced the defense. Id. at 687–88; Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987). This second requirement is referred to as the prejudice prong.

However, the Supreme Court has recognized an important exception to the prejudice prong under Strickland. This exception occurs when the likelihood of an unreliable verdict is so high that a case-by-case inquiry into prejudice is unnecessary. Mickens, 535 U.S. at 166. In such situations, such as when a defendant's attorney actively represents conflicting interests, we forgo an individual inquiry into Strickland prejudice and presume that counsel's performance undermined the verdict—in other words, courts presume prejudice. Id.

To presume prejudice under the Strickland standard for a conflict of interest—and thus establish a violation of the Sixth Amendment—a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest adversely affected his lawyer's performance. Cuyler, 446 U.S. at 348–49 (emphasis added). Even if an objection is not made at trial, the trial court has an independent duty to inquire into a conflict of interest in situations where the court knows or reasonably should know that an actual conflict exists. Id. at 347. The independent duty of the trial court to inquire as discussed in Cuyler forms the basis for Nettles's argument that his conflict-of-interest claim may be framed as trial-court error and heard on direct appeal. However, Cuyler addressed these questions not on direct appeal, but in a post-conviction procedural posture and in the context of whether the defendant was denied the effective

10

assistance of counsel guaranteed by the Sixth Amendment. Id. at 339, 345–47. As a result, Cuyler does not provide support for Nettles's argument that his claim may be heard on direct appeal.

The Supreme Court did address a trial court's independent duty to inquire into conflicts of interest in the context of a direct appeal in Wood v. Georgia. In Wood, three defendants were represented by an attorney paid for by their employer in a probation revocation hearing. 450 U.S. at 266. The record suggested that the employer promised to but refused to pay the defendants' fines in an attempt to obtain from the court a favorable equal-protection precedent on appeal. Id. at 267. The employer's desire to obtain a favorable precedent possibly conflicted with the defendants' interests in obtaining leniency from the court or paying lesser fines to avoid imprisonment. Id. at 269. The Supreme Court held that the possibility defense counsel was actively representing the conflicting interests of employer and defendants "was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further" into the conflict. Id. at 272. Because the Court lacked sufficient evidence to determine whether defense counsel's representation was compromised by an actual conflict, the Court—despite being on direct appeal—remanded the matter to the trial court to determine "whether the conflict of interest that this record strongly suggests actually existed." Id. at 273. Notably, Wood did not reverse the trial court's judgment as Nettles requests here.

Missouri provides a framework to determine whether an attorney's conflict of interest gives rise to a claim of ineffective assistance of counsel through a post-conviction Rule 29.15 motion. Functionally, our requirement that Nettles raise his ineffective-assistance claim in a post-conviction motion provides defendants the same constitutional protection as in Wood. On remand in Wood, the defendant had the opportunity at a hearing to prove an actual conflict that

11

adversely affected his lawyer's performance to establish ineffective assistance under the Sixth Amendment. See Mickens, 535 U.S. at 169–72 (interpreting Wood to require a petitioner to prove both an actual conflict and that the "conflict adversely affected counsel's performance"). Nettles has the same opportunity as the defendants in Wood to prove an actual conflict existed that adversely affected Taaffe's performance in a post-conviction hearing. If Nettles produces such evidence, the motion court must presume Strickland prejudice and grant his claim of ineffective assistance of counsel. Missouri's requirement that Nettles raise his claim in a post-conviction motion does not adversely affect his Sixth Amendment rights to assistance of counsel, but merely requires him to assert those rights exclusively within the framework of a post-conviction motion. Neither Cuyler nor Wood transforms Nettles's claim into trial-court error cognizable on direct appeal.

To be sure, a trial court bears an independent duty during trial to inquire into potential conflicts of interests as expressed in Cuyler and Wood. The record clearly shows that the trial court was aware of circumstances which raised the issue of Taaffe's conflict of interest in representing Nettles. Regrettably, the record before us also makes clear that a reasonable inquiry into the conflict issue was not made by the trial court. As a result, Nettles now has the opportunity to present his evidence of ineffective assistance in a post-conviction proceeding authorized by Missouri Supreme Court rules. Our courts not only have the duty to dispense justice to individuals, but are responsible for maintaining the integrity of the judicial system. State ex rel. Horn v. Ray, 325 S.W.3d 500, 511 (Mo. App. E.D. 2010). Missouri courts have an independent interest in ensuring criminal trials are conducted within the ethical standards of the profession, and disqualification of a defense attorney with a conflict is an inherent power of our courts. Id. However, once convicted, a post-conviction hearing provides the parties the

12

appropriate forum to pursue a claim of conflict of interest that was not inquired into by the trial court. In a post- conviction hearing, the movant may adduce additional facts relevant to defense counsel's actual conflict of interest rather than relying solely on a limited trial record. Remanding this case on direct appeal to the trial court to determine whether an actual conflict existed—as the Supreme Court did in Wood—would not accomplish anything materially different than requiring Nettles to present the same evidence of actual conflict in a post-conviction hearing. Missouri law dictates that Nettles pursue his claim within the established procedures for proving Strickland ineffective assistance of counsel claims. Missouri's post-conviction procedure for addressing such claims is consistent with the constitutional safeguards discussed in Cuyler and Wood.

Although Nettles characterizes his claim as trial-court error, Nettles asserts a claim of ineffective assistance of counsel. Nettles's claim is not cognizable on direct appeal and must be raised in a post-conviction motion. Point One is denied.

## II. Point Two—Cross-Examination into Shelton's Prior Bad Acts

Nettles further contends the trial court erred in precluding him from cross-examining Shelton about his prior bad acts. Shelton testified on direct examination that, during the beating of Victim, he was "stunned" and "in shock at what just happened." Nettles argued at trial that this testimony opened the door to cross-examination on Shelton's prior assault of his cousin with a baseball bat. The trial court rejected this argument and sustained the State's objection. This line of questioning, Nettles contends on appeal, would rebut the inference that Shelton was merely a bystander in the crime.

We must first determine whether Nettles properly preserved this issue for appeal. When the State's objection to proffered evidence is sustained, the defendant must make an offer of proof during trial to preserve the matter for appellate review. State v. Chambers, 234 S.W.3d

13

501, 511 (Mo. App. E.D. 2007). Courts strictly apply this rule because trial judges should have the opportunity to reconsider their prior rulings against the backdrop and in light of the circumstances that exist when the actual evidence is adduced. Id. The record shows that Nettles did not make an offer of proof.

We note that a limited exception exists to the general rule requiring an offer of proof. State v. Woods, 357 S.W.3d 249, 253 (Mo. App. W.D. 2012). An offer of proof is unnecessary when (1) there is a complete understanding based on the record of what the excluded testimony would have been; (2) the objection relates to a category of evidence rather than to specific testimony; and (3) the record reveals that the evidence would have helped its proponent. Id. Nettles may not rely upon this exception to preserve his allegation of error because none of the three elements are present here.

First, the record does not suggest that a complete understanding of the excluded testimony exists. Taaffe did not elaborate on the testimony he sought to elicit, but immediately moved on to a different subject after the trial court's ruling. While the record demonstrates that Taaffe clearly wanted to question Shelton about his prior assault of his cousin with a baseball bat, there is a complete lack of evidence as to how Shelton would have responded to such questioning. Likewise, we have no knowledge as to how Taaffe would have responded to Shelton's testimony.

Second, the State's objection was made to specific testimony rather than a category of evidence. The State objected to specific testimony from Shelton about Shelton's prior assault of his cousin with a baseball bat.

Third, the record does not reveal how the excluded evidence would have helped Nettles. Nettles argues that Shelton's testimony on direct examination created a clear inference that

14

Shelton was shocked because he had just witnessed a violent attack, and that Shelton was—for the most part—a bystander in the crime. Nettles sought to rebut this inference. However, even if the evidence permitted such an inference to be drawn, rebutting that inference would not have provided Nettles with a defense and would have been fruitless. The instructions in the case were based on accomplice liability for each count against Nettles. For example, Instruction Five asked the jury to determine whether Nettles committed first-degree murder. Instruction Five required the jury to find that "**Coran Nettles, Kendall White, or Bryan Shelton** caused the death of [Victim] by striking him." (Emphasis added.) Given the instructions, whether Nettles rebutted the inference that Shelton was an innocent bystander is irrelevant for each count on which Nettles was convicted. Even if Shelton was not an innocent bystander and was the person who actually struck Victim with the bedpost and barbell, the evidence nevertheless supported the jury's guilty verdict on each count based upon accomplice liability.[6] Therefore, such evidence would not have helped Nettles.

Absent preservation of error through an offer of proof, we may only review for plain error. Woods, 357 S.W.3d at 254. However, we find no substantial grounds for believing a manifest injustice or miscarriage of justice occurred by precluding cross-examination of Shelton about the baseball-bat assault. As discussed above, rebutting an inference that Shelton was merely a bystander would not have affected the verdict. Therefore, we decline to review for

---

[6] To prove accomplice liability for first-degree murder, the State must prove beyond a reasonable doubt that each accomplice had the independent specific intent of deliberation sufficient for first-degree murder. State v. O'Brien, 857 S.W.2d 212, 218 (Mo. banc 1993). Instruction Five required the jury to find that Nettles himself acted with White or Shelton in causing the death of Victim and that Nettles himself "did so after deliberation." Therefore, it is still irrelevant whether Shelton was or was not an innocent bystander because the jury independently determined Nettles's specific intent for first-degree murder.

15

plain error.  See Rule 30.20; State v. White, 247 S.W.3d 557, 561 (Mo. App. E.D. 2007) (outlining plain-error review).

Nettles waived this point on appeal by not submitting an offer of proof.  Because we find no substantial grounds to believe that a manifest injustice or miscarriage of justice occurred by the trial court's ruling limiting cross-examination, we decline to exercise plain-error review and deny Nettles's second point on appeal.

### Conclusion

The decision of the trial court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.

16