Gary M. Gaertner, Jr., Presiding Judge
Introduction
This case addresses the issue of when a trial court must permit an attorney to withdraw due to a conflict of interest. Appellant Randy L. McEntire's (Defendant) trial counsel, Kevin Chase (Chase), sought to withdraw after discovering that his direct supervisor was representing the confidential informant (CI), who was one of the State's witnesses against Defendant, in an unrelated criminal case in another county. During the one-week time span between the State's disclosure of the name of the CI to Chase and Chase learning that his supervisor was the attorney for the CI, a docket entry in the case against the CI reflects that the State intended to file a nolle prosequi in the CI's case. Due to the patent appearance of impropriety in this situation, we find that the trial court's denial of Chase's motion to withdraw was an abuse of discretion. We reverse and remand for a new trial.
Background
The State charged Defendant with two counts of distribution of a controlled substance. Eddie Gilliland (Gilliland) is a confidential informant for the police, and he was involved in two drug transactions that led to the charges against Defendant. The State initially endorsed Gilliland as a witness but had identified him only as "Confidential Informant #5935." On November 2, 2016, Defendant's prior counsel filed a motion to disclose the witness' name and address.
On December 2, 2016, Chase filed a proposed order to disclose the identity of the confidential informant. On December 5, 2016, the trial court ordered the State to disclose the name of the witness that same day. The State filed its answer that day, disclosing Gilliland's name and also responding to a prior request by Defendant that the State disclose whether it had made any deals with any witnesses in exchange for testimony against Defendant. The State asserted the State had not made any deals with Gilliland for his cooperation as a witness in Defendant's case.
Defendant's trial was set to begin one week later on December 12, 2016. That morning, prior to the commencement of trial, Chase moved for leave to withdraw as Defendant's counsel due to a conflict of interest. Chase explained that he had discovered the night before that his direct supervisor, Wayne Williams (Williams), represented Gilliland in an unrelated felony drug possession case in Madison County. Chase informed the court that the last docket entry in the case against Gilliland was from four days earlier, December 8, 2016, and it indicated that the State intended to file a nolle prosequi.[1]
*484 Chase stated that Williams told him Williams had minimal contact with Gilliland and that Gilliland may have mentioned he was a confidential informant, but that the case against Gilliland was set to be dismissed because the Madison County prosecutor's office had not been able to secure a police report. However, because the case against Gilliland was technically still ongoing and therefore Chase's supervisor's representation of Gilliland had not ended, Chase moved to withdraw as counsel for Defendant. The State responded that it would need to call Gilliland as a witness for both counts against Defendant, and that there could be a potential problem for Defendant regarding impeachment of Gilliland if he could not discover the disposition of the case in Madison County. The trial court took a recess to take the matter under advisement.
When proceedings resumed, Chase stated to the trial court that Defendant was not waiving any conflict of interest that Chase's office might have with Gilliland. Chase renewed his request to withdraw. The trial court stated it did not believe a direct conflict existed given that Chase had no knowledge of the conflict until the day before and Gilliland's case was entirely unrelated. The trial court denied Chase's motion to withdraw.
The trial court took another recess, after which Chase again renewed his motion to withdraw and called Gilliland to testify in support of the motion. Gilliland testified that Williams appeared with him in court as his counsel on October 10, 2016, and then again on December 8, 2016. Gilliland testified that his communication with Williams was minimal and concerned "basically minimizing the bond and getting [him] out sooner." Gilliland testified that Williams told him at the court date on December 8 the case against him would be dismissed due to a lack of evidence. Gilliland testified that he told Williams he was a confidential informant, and Williams said that he did not want to hear anything about it because it could concern one of his clients.
At the end of Gilliland's testimony, Chase argued that Defendant's waiver of a jury trial should mitigate concerns regarding a waste of time, and Chase again requested both a continuance of trial and permission to withdraw. The State responded that "there could be some consequences if there's an appearance of impropriety regarding the relationship between my witness and the public defender's office[.]" The trial court denied Chase's motions, reasoning that "based upon the earlier record, Mr. Chase said that he just found out about this yesterday and had no contact with Mr. Williams with regards to the substantive matters of this issue."
After a bench trial, the trial court found Defendant guilty of both charges and sentenced him to concurrent terms of 15 years' imprisonment on each count. This appeal follows.
Discussion
Defendant does not challenge the sufficiency of the evidence to support his convictions. Rather, he argues that the trial court abused its discretion in denying Chase's motion to withdraw due to a conflict of interest, which constituted a violation of Defendant's Sixth Amendment right to conflict-free counsel. We agree.
We review a trial court's decision on a motion to withdraw for an abuse of discretion. State v. Christeson, 50 S.W.3d 251, 261 (Mo. banc 2001). "Judicial discretion *485 is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id.
The Sixth Amendment to the United States Constitution guarantees defendants "the right to ... have the Assistance of Counsel for [their] defence."[2] U.S. Const. amend. VI. This includes the right to be represented by counsel that is free from conflicts of interest. Wood v, Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) ; State ex rel. Fleer v. Conley, 809 S.W.2d 405, 408 (Mo. App. E.D. 1991).
When a potential conflict of interest comes to the trial court's attention, the trial court has an affirmative duty to inquire into the conflict. Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (discussing Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) : " Holloway requires state trial courts to investigate timely objections to multiple representation"); see also Caban v. U.S., 281 F.3d 778, 781 (8th Cir. 2002) (duty to conduct inquiry applies "regardless of the nature of the conflict") (citing Wood, 450 U.S. at 272 n.18, 101 S.Ct. 1097 ). When the trial court finds no conflict, its inquiry ends. However, if the court finds an actual conflict or serious potential for conflict, the court has a subsequent obligation to either disqualify counsel or to inquire regarding the defendant's waiver of the conflict. See U.S. v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) ; see also State ex rel. Kinder v. McShane, 87 S.W.3d 256, 263 (Mo. banc 2002) (discussing trial court's duty to investigate waiver when actual conflict or serious potential for conflict exists).
Here, Chase made the trial court aware of the potential conflict of interest before trial began, and the trial court conducted an inquiry into the conflict by hearing from Chase, the State, and Gilliland. Chase notified the court that his direct supervisor, Williams, represented Gilliland, a witness against Defendant. The representation had not yet terminated, but during the week in between the State's disclosure of Gilliland's name and the start of Defendant's trial, a docket entry in Gilliland's case indicates the Madison County prosecutor intended to dismiss the case against Gilliland. Williams' representation of Gilliland had not yet terminated at the time of trial. Chase made clear that Defendant did not waive any conflict.
The Missouri Supreme Court has held that "[a]n attorney who represents both the defendant and a prosecution witness in the case against the defendant is representing conflicting interests," State ex rel. Kinder v. McShane, 87 S.W.3d 256, 260 (Mo. banc 2002) (quoting Ciarelli v. State, 441 S.W.2d 695, 697 (Mo. 1969) ). Moreover, "[t]hat different lawyers from the same office are separately engaged in the representation makes no difference." Gordon v. State, 684 S.W.2d 888, 890 (Mo. App. W.D. 1985) (citing Ciarelli, 441 S.W.2d 695 ).
We note that Missouri's Rules of Professional Conduct do not per se disallow the situation here, where two attorneys from the public defender's office simultaneously represent a defendant and a State's witness *486 against that defendant. Rule 4-1.11,[3] initially adopted in 1994, addresses conflicts of interests specifically for government officers and employees, including the public defender's office. See State v. Lemasters, 456 S.W.3d 416, 421 (Mo. banc 2015). While such a conflict of interest would be imputed to lawyers in the same firm under Rule 4-1.10, given the special nature of government entities such as the public defender's office, Rule 4-1.11 does not do so, though the comments note that "ordinarily it will be prudent to screen such lawyers." Lemasters, 456 S.W.3d at 422 (quoting Rule 4-1.11, Comment 2). Thus, Missouri's ethical rules do not technically prohibit Williams' and Chase's concurrent representation of Gilliland and Defendant.
However, such a conclusion "does not end the analysis." Lemasters, 456 S.W.3d at 422. As in Lemasters, the trial court here would likely have granted Chase's motion to withdraw if the conflict was imputed under Missouri's ethical rules, "but the converse is not necessarily true." Id. The trial court has an obligation not only to enforce ethical rules, but also to uphold "society's perception that the [criminal justice] system is fair and its results are worthy of reliance." Id. Trials must not only be fair, but also "justice must satisfy the appearance of justice." Id. at 422-23 (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954) ); see also State ex rel. Horn v. Ray, 325 S.W.3d 500, 511 (Mo. App. E.D. 2010) ("The courts have not only the duty to dispense justice, but the equally important duty to maintain the integrity of the judicial system"). Due to the trial court's obligation to maintain the integrity of the judicial system as well as public confidence in the system, "if a reasonable person with knowledge of the facts would find an appearance of impropriety and doubt the fairness of the trial," the trial court must disqualify conflicted counsel. See Lemasters, 456 S.W.3d at 422-23.
We find under the circumstances here, the trial court abused its discretion in denying Chase's motion to withdraw. The public defender's office actively represented conflicting interests in that Gilliland was the CI and later a disclosed and endorsed witness in the case against Defendant. The fact that Gilliland's and Defendant's cases were unrelated does not remove the conflict, because "[i]t is the relationship of counsel to the parties that creates the conflict, not the relationship of the offenses." Gordon, 684 S.W.2d at 891. Further, Williams was not simply a distant staff attorney in the same office, but was Chase's direct supervisor. Cf. State v. Johnson, 549 S.W.2d 348, 350-51 (Mo. App. 1977) (finding fact that one attorney from large public defense organization represents defendant and another staff attorney from same organization represented prosecution witness in concluded and unrelated criminal matter does not create per se conflict of interest). Additionally, three days after the State disclosed Gilliland's name to Chase and four days before Defendant's trial, Gilliland's case was set to be dismissed. This is evidence of a serious potential for conflict that should have prompted the trial court to either disqualify Chase or inquire about a waiver. See McShane, 87 S.W.3d at 263. Chase made it clear that Defendant did not waive any conflict.
Williams did not testify regarding what he knew of the conflict or what he communicated to Chase. Though Gilliland testified he did not give Williams any information besides the fact that he was a confidential informant, and Chase testified he and *487 Williams did not discuss Defendant's case, we believe a reasonable person with knowledge of the timeline of events in this case-especially the timing of the pending dismissal of Gilliland's case-would perceive an appearance of impropriety and a conflict of interest. Chase moved to withdraw not once, but three times, and he would have been in the best position to evaluate the seriousness of the conflict of interest. See Holloway, 435 U.S. at 485, 98 S.Ct. 1173 ("most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted"). Moreover, even the State acknowledged the potential difficulty for Defendant to impeach Gilliland and that "there could be some consequences if there's an appearance of impropriety regarding the relationship between my witness and the public defender's office[.]"
Under all of the circumstances here, we find the trial court abused its discretion in failing to disqualify Chase.[4]
*488 Though a trial court is permitted to take timing of the notification of a conflict into account in deciding whether to grant a motion to withdraw, State v. Chalk, 950 S.W.2d 629, 631 (Mo. App. E.D. 1997), a trial court must protect both the integrity of the judicial system and a defendant's Sixth Amendment right to conflict-free counsel, which all parties acknowledged had the potential for serious problems here. Point granted.
Conclusion
The trial court abused its discretion in denying Defendant's counsel's motion to withdraw in light of the circumstances here indicating a serious potential for a conflict of interest given that the State's witness was simultaneously represented by Defendant's counsel's direct supervisor and Defendant did not waive the conflict. We reverse and remand for a new trial.
Robert M. Clayton III, J., concurs and Angela T. Quigless, J., dissents in separate opinion.

Defendant was represented by the public defender's office beginning on August 13, 2014. Chase entered his appearance on Defendant's behalf on November 22, 2016. Williams first appeared with Gilliland in court on October 10, 2016, thus the overlap in representation of Gilliland and Defendant by the public defender's office existed at least from October 10, 2016 until Defendant's trial date of December 12, 2016. As of that date, the State had not yet filed its nolle prosequi in Gilliland's case, and there is no indication in the record on appeal whether or when that took place.

The Sixth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment, and the Missouri Constitution, article I, section 18(a), similarly protects a defendant's right to effective assistance of counsel. See State ex rel. Mo. Pub. Defender Comm'n v. Waters, 370 S.W.3d 592, 605 (Mo. banc 2012).

All rule references are to Mo. R. Civ. P. (2016), unless otherwise indicated.

We note the State's argument that Defendant must show more than an abuse of discretion on the part of the trial court, but additionally that he was actually prejudiced by Chase's representation, citing State v. Johnson, 549 S.W.2d 348 (Mo. App. 1977). The dissenting opinion relies on Johnson as well. Diss. op. at 489. Besides Johnson, sparse Missouri or federal case law addresses the circumstance where a defendant notifies the trial court before trial of a conflict, the trial court conducts an inquiry, and that inquiry is reviewed on appeal. In most instances, either the conflict is never raised or the trial court fails to conduct an inquiry. In the former situation, a defendant who fails to raise a conflict before trial does have to show prejudice, and the vehicle for raising the conflict is a post-conviction motion. See State v. Nettles, 481 S.W.3d 62, 71 (Mo. App. E.D. 2015). In the latter case, if a trial court fails to conduct an inquiry, prejudice is not required and reversal is automatic. Caban v. United States, 281 F.3d 778, 781-82 (8th Cir. 2002) (discussing reversal rule in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), noting that Cuyler addresses situations where trial court was not notified of conflict but reasonably should have known and inquired). Missouri cases considering extraordinary writs after a trial court denies a motion to disqualify counsel due to a conflict of interest apply an abuse of discretion standard. See State ex rel. Kinder v. McShane, 87 S.W.3d 256, 260 (Mo. banc 2002) ; State ex rel. Horn v. Ray, 325 S.W.3d 500, 504 (Mo. App. E.D. 2010).
In Johnson, the defendant raised a conflict of interest during trial and defense counsel moved to withdraw, which the trial court denied. 549 S.W.2d at 350. For the defendant to prevail, this Court required evidence that "something must have been done by counsel in the trial, or something must have been foregone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to the interests of [the] witness." Id. However, for this standard, the Johnson court cited post-conviction relief cases, which apply a different standard of review, as noted above. It is important to keep these different types of appeal distinct. See Atley v. Ault, 191 F.3d 865, 873 (8th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ) ("collateral review is different from direct review"). Johnson simply appears to conflate the two standards, and it was decided prior to the United States Supreme Court decisions in Holloway and Cuyler regarding the trial court's duty to inquire into conflicts of interests. A more recent Missouri Supreme Court case, State v. Christeson, considered a trial court's denial of a motion to withdraw due to a conflict of interest raised by defense counsel three months prior to trial, and the Missouri Supreme Court reviewed the denial for an abuse of discretion. 50 S.W.3d 251, 261 (Mo. banc 2001). We apply the same standard here. Additionally, though even under this standard defendants often must show prejudice to merit reversal in other types of cases, the prejudice here is to the judicial system, and we do not agree that Defendant should be held to a post-conviction ineffective-assistance-of-counsel standard simply because he had a trial due to this error by the trial court. Until such time as the United States Supreme Court or Missouri Supreme Court would clearly hold evidence of prejudice to defendants is required under these circumstances, the existing cases, besides Johnson, addressing direct appeals after denials of motions to withdraw do not convince us Defendant must additionally show prejudice to the representation he received at trial.