

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106093 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Brian H. May |
| BRANDON TATE, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 23, 2019 |

### Introduction

Brandon Tate ("Tate") appeals from the trial court's judgment, entered after a jury found him guilty of one count of first-degree murder, two counts of armed criminal action, and one count of unlawful use of a weapon. In his sole point on appeal, Tate alleges that the trial court plainly erred in failing to sua sponte disqualify trial counsel due to an apparent conflict of interest. Because Tate's argument is not cognizable on direct appeal, we deny Tate's appeal and affirm the judgment of the trial court.

### Factual and Procedural History

Tate was tried in September of 2017 for crimes allegedly committed by him in August of 2015. Evidence was adduced at trial that Tate was driving a black vehicle with Michelle Jefferson ("Jefferson") riding as the passenger.[1] Jefferson had been smoking marijuana and

---

[1] On appeal, Tate does not challenge the sufficiency of the evidence to support his convictions. Accordingly, we set forth only the facts necessary to resolve the issue Tate raises on appeal.

drinking. As Dennell Jones ("Jones"), Quincy Pirtle ("Pirtle"), and Victim were walking down the street, Tate drove past them. Victim identified Tate to Jones. Tate circled the block and accelerated towards the three men. Tate exclaimed "What's up now, b**** a** n*****." Tate shot at Jones, Pirtle, and Victim through his driver's side window. Victim died as a result. Jones and Jefferson both testified regarding the shooting and Tate's involvement. Pirtle was unable to identify the shooter. Tate's phone records suggested that Tate was not where his alibi placed him at the time of the shooting, but instead was near the scene of the shooting.

Leavie Morris ("Morris") was called to testify on behalf of the State at trial. Morris testified about Tate's possible motive for shooting Victim. Morris was Victim's half-brother and was familiar with Tate. When asked about his prior criminal history, Morris testified that trial counsel, whose first name is Jolene, had represented him in two prior cases:

> STATE: And [Morris], before we talk about the case I have to go over your past criminal history, okay, real quick. You pled guilty to felony distribution of a controlled substance back in 2009 in St. Louis County, is that right?
> MORRIS: Yes, sir, and Jolene was my lawyer on that.
> STATE: Okay. And back in 2009 you pled guilty to trafficking drugs, second degree, in St. Louis County, is that right?
> MORRIS: Yes, sir. Jolene was my [counsel] on that, also.
> STATE: All right. Back in 2016 you pled guilty to misdemeanor resisting arrest in St. Louis City, is that right?
> MORRIS: Yes. Melinda Ward is my [counsel] on that.

Trial counsel did not object to these statements.

Morris then testified about an incident involving Tate that occurred about one week before the shooting. Morris and Victim were at a gas station when Tate approached Morris. Tate said his sister told him that Morris had hit her. Tate punched Morris, and then spoke with Victim about the incident. Trial counsel did not cross-examine Morris, who denied hitting Tate's sister but acknowledged that he "grabbed her by the throat and by the dreads." Tate corroborated Morris's testimony during his interview with police.

2

The State offered Morris's testimony as evidence that Tate knew Victim and there was some friction between Tate and Victim. Tate admitted the incident between him and Morris, but argued the incident did not support a motive for the shooting. Tate emphasized that the incident occurred one week prior to the shooting, was between Morris and Tate as opposed to Victim and Tate, and left no residual hostilities between Tate and either Morris or Victim. At trial, Tate highlighted Pirtle's testimony that the shooter was in a black truck, not a car, and argued this testimony was proof that Victim was killed by someone other than Tate.

The trial court submitted the case to the jury for deliberation. The jury found Tate guilty of one count of murder in the first degree, two counts of armed criminal action, and one count of unlawful use of a weapon. The jury recommended a sentence of life without parole for the first-degree murder conviction. The sentencing court sentenced Tate to concurrent terms of life in prison for the first-degree murder conviction, ten years in prison for the first armed-criminal-action conviction, ten years in prison for the second armed-criminal-action conviction, and ten years in prison for the unlawful-use-of-a-weapon conviction. Tate now appeals.

## Point on Appeal

In his sole point on appeal, Tate contends that the trial court plainly erred in failing to sua sponte disqualify trial counsel after it became apparent to the trial court that trial counsel previously represented Morris, the State's motive witness.

## Standard of Review

Tate did not raise any objection at trial after learning that trial counsel previously represented Morris in two criminal matters. Because Tate did not object to his counsel's continued representation upon learning of his counsel's potential conflict of interest, we may only review this issue for plain error. State v. Perry, 548 S.W.3d 292, 300 (Mo. banc 2018);

3

Rule 30.20.[2] We review for plain error under a two-step process. State v. Tillitt, 552 S.W.3d 571, 578 (Mo. App. W.D. 2018). We first analyze whether substantial grounds exist for believing the trial court committed a plain error. State v. Barnaby, 91 S.W.3d 221, 224–25 (Mo. App. W.D. 2002). A plain error is an error that is evident, obvious, and clear. State v. Taylor, 466 S.W.3d 521, 533 (Mo. banc 2015); Collings v. State, 543 S.W.3d 1, 14 (Mo. banc 2018). We then ascertain whether such "evident, obvious, and clear" error has indeed produced a "manifest injustice or a miscarriage of justice" that will ensue if the error is left uncorrected. Collings, 543 S.W.3d at 14.

## Discussion

Tate maintains that the trial court was required to sua sponte disqualify trial counsel from her continued representation of Tate after Morris testified that trial counsel previously had represented Morris in two criminal proceedings. Tate avers that trial counsel's conduct constituted improper successive representation and that the trial court's error in refusing to sua sponte disqualify trial counsel created an appearance of impropriety before the jury.

Successive representation "occurs when [counsel] represents a defendant and has previously represented co-defendants or trial witnesses[.]" State v. Nettles, 481 S.W.3d 62, 67 (Mo. App. E.D. 2015). "The most common example of an actual conflict of interest arising from successive representation 'occurs where [counsel's] former client serves as a government witness against the [counsel's] current client at trial.'" Id. (quoting Moss v. United States, 323 F.3d 445, 460 (6th Cir. 2003)). Here, trial counsel's former client, Morris, testified against Tate as a State witness. Because trial counsel's responsibilities of confidentiality to Morris as a former client presented a potential risk of materially limiting trial counsel's representation of Tate, trial

---

[2] All Rule references are to Mo. R. Crim. P. (2017).

4

counsel's successive representation of Morris and Tate gave rise to the possibility of a conflict of interest. Id.; see also Mo. R. Prof'l Conduct 4-1.6, .7, .9. The record suggests only that trial counsel represented Morris in 2009, eight years prior to Morris's testimony. The record lacks any further information regarding the duration of trial counsel's representation, the nature of the representation, the connection, if any, between Morris's convictions and Tate's case, or any potential effect trial counsel's successive representation may have had on Tate's trial. While successive representation creates a possibility that trial counsel had an actual conflict of interest in representing Tate at the time of trial, "the mere possibility of conflict is insufficient to impugn a criminal conviction." Hickey v. State, 328 S.W.3d 225, 231 (Mo. App. E.D. 2010) (citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

Despite our concerns that trial counsel's prior representation of Morris could potentially impact her representation of Tate in the matter before us, Missouri authority dictates that Tate's claim is not cognizable as asserted. See Nettles, 481 S.W.3d at 67; State v. Whitley, 408 S.W.3d 305, 310 (Mo. App. E.D. 2013).

Tate acknowledges that Missouri case law expressly holds that a claim of ineffective assistance due to successive representation is not cognizable on direct appeal. See Nettles, 481 S.W.3d at 68; Whitley, 408 S.W.3d at 310 (finding the ineffective-assistance-of-counsel claim not cognizable on direct appeal despite being framed as trial-court error). However, Tate invites this court to re-examine this authority. Specifically, Tate reasons that once the trial court learned of the potential conflict through the evidence adduced at trial, it had an affirmative duty to inquire whether the successive representation by trial counsel of Morris and Tate presented a current and actual conflict. The trial court's failure to inquire forms the basis of Tate's allegation of trial-court error. The defendant in Nettles raised the same unsuccessful legal argument.

5

We reject Tate's invitation. The U.S. Supreme Court has clearly stated, "nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case." Cuyler, 446 U.S. at 346. To the contrary, trial courts, generally are entitled to rely upon counsel to "avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial." Id. Absent special circumstances, "trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." Id. at 347 (finding that counsel "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."). Tate argues that his claim is cognizable on direct appeal because the alleged trial court error and resulting manifest injustice undermines the credibility and integrity of the judicial system, and therefore his claim is not one of ineffective assistance of counsel. Tate offers this Court's opinion in State v. McEntire, 551 S.W.3d 481 (Mo. App. E.D. 2018) as support for his argument that the trial court had an affirmative duty to inquire into a potential conflict, and committed plain error by its failure to do so.

Tate's argument fails because the facts of McEntire are significantly distinguishable. Unlike the case before us, counsel in McEntire raised the conflict of interest issue before the trial court and affirmatively sought to withdraw as trial counsel due to the potential conflict. McEntire, 551 S.W.3d at 484, 486. We held the trial court abused its discretion when it did not disqualify trial counsel following trial counsel's motion to withdraw once he learned that his direct supervisor currently represented a State witness in the trial against the defendant. Id. at 486, 487–88. In this context, our Court properly recognized the trial court's obligation to affirmatively inquire into the potential consequences of the apparent conflict. In so holding, McEntire applied the holding in Holloway v. Arkansas, 435 U.S. 475 (1978) that requires state

6

courts to investigate timely objections to conflicts of interest. Id. at 487 n.4. Lacking here is any timely objection by any party to trial counsel's continued representation of Tate after Morris's disclosure of his past representation by trial counsel. "Unless the trial court knows or reasonably should know that particular conflict exists, the court need not initiate an inquiry." Cuyler, 446 U.S. at 347. Our review of the record finds no facts creating a "special circumstance" so as to relieve the trial court of its traditional role of relying upon counsel to professionally and ethically determine if a conflict exists. See id. at 346–47. Tate suggests Morris's trial testimony creates the "special circumstance" triggering the trial court's duty of inquiry. We are not persuaded. The record shows limited testimony from Morris that he was represented by trial counsel on unrelated charges many years prior to Tate's arrest. Such facts do not raise a sufficient specter of a present, actual conflict of interest so as to invoke an affirmative duty of the trial court to make an independent inquiry.[3]

Accordingly, the issues raised by Tate in this appeal are appropriately addressed through a motion for post-conviction relief. Critically, in order to establish trial-court error, the defendant must prove an actual conflict occurred. See DePriest v. State, 510 S.W.3d 331, 340–41 (Mo. banc 2017) (holding that evidence of an actual conflict of interest resulting from counsel's concurrent representation of multiple clients facing criminal charges arising out of the same facts and circumstances merits an evidentiary hearing to determine whether counsel was ineffective). Here, an "actual conflict of interest" occurs only if the successive representation adversely affected trial counsel's performance. See id. at 340–41 (quoting Mickens v. Taylor,

---

[3] We note that Cuyler involved a simultaneous, multiple representation by the trial counsel of co-defendants, creating a potential conflict of interest. See Cuyler, 446 U.S. at 337–38. This case before us presents an issue of successive representation of individuals. The potential for actual conflict is presented with both types of representation. See id.; Nettles, 481 S.W.3d at 67. However, the distinction between multiple and successive representation has no bearing on our analysis because Morris's testimony merely suggested the potential for a conflict of interest, and did not suggest any adverse consequences resulting from a present and actual conflict.

7

535 U.S. 162, 172 n.5 (2002)). The analysis of trial counsel's performance in connection with claims of successive representation is appropriately left for post-conviction proceedings, not a direct appeal. See Nettles, 481 S.W.3d at 68–69.

Contrary to a direct appeal, a post-conviction proceeding provides the movant the opportunity to "adduce additional facts relevant to defense counsel's actual conflict of interest rather than relying solely on a limited trial record." Id. at 71. The argument Tate raises in this appeal relates almost exclusively to constitutional notions of fair representation under the Sixth Amendment to the U.S. Constitution and the Rules of Professional Responsibility. See State v. Celis-Garcia, 420 S.W.3d 723, 731 (Mo. App. W.D. 2014) ("[I]ssues involving the right to advice from conflict-free counsel may be properly raised in post-conviction proceedings."). Although presented as a direct appeal of trial-court error, we view Tate's claim as one of ineffective assistance of counsel. See id.; Nettles, 481 S.W.3d at 68–69; Whitley, 408 S.W.3d at 310. Claims of ineffective assistance of counsel due to a conflict of interest are not cognizable in Tate's direct appeal. See Celis-Garcia, 420 S.W.3d at 731; Whitley, 408 S.W.3d at 310; Nettles, 481 S.W.3d at 68–69; see also State v. Webber, 504 S.W.3d 221, 230 (Mo. App. W.D. 2016) (quoting State v. Brown, 438 S.W.3d 500, 505 n.5 (Mo. App. S.D. 2014)) (noting that Rules 24.035 and 29.15 "provide the exclusive procedure through which post-conviction relief because of ineffective assistance of counsel may be sought.").

Point One is denied.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

8