David G. DEPRIEST, Appellant,

v.

STATE of Missouri, Respondent.

Natalie DePriest, Appellant,

v.

State of Missouri, Respondent.

No. SC 95483, No. SC 95484

Supreme Court of Missouri,
en banc.

Opinion issued February 28, 2017

Lisa M. Stroup, Public Defender's Office, St. Louis, for David DePriest.

Gwenda R. Robinson, Public Defender's Office, St. Louis, for Natalie DePriest.

Shaun J. Mackelprang, Attorney General's Office, Jefferson City, for State.

## PER CURIAM

David and Natalie DePriest appeal from the motion court's judgments overruling, without evidentiary hearings, their separate Rule 24.035 motions for post-conviction relief. Both alleged they had received ineffective assistance of counsel in pleading guilty due to an actual conflict of interest arising out of trial counsel's dual representation of the DePriests during plea negotiations and subsequent guilty pleas. In their amended motions, the DePriests separately requested evidentiary hearings. The motion court overruled each of the DePriests' motions without evidentiary hearings. This Court has jurisdiction over the appeals pursuant to article V, section 10, of the Missouri Constitution. The motion court's judgments are vacated, and these cases are remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The DePriests are brother and sister. After a maintenance man reported a marijuana-growing operation in their apartment, the police searched it and seized several plants, seedlings, packages of marijuana, and a firearm.[1] David and Natalie were charged separately with: (1) producing a controlled substance by cultivating more than five grams of marijuana under section 195.211,[2] (2) possession of a controlled substance with intent to distribute under section 195.211, and (3) unlawful

---

1. For purposes of clarity, we refer to the DePriests by their given names. No disrespect is intended. For purposes of this opinion, we take the facts from the DePriests' amended motions and presume they are true.

2. Unless otherwise stated, all statutory references are to RSMo Supp. 2013.

possession of a weapon under section 571.020. The DePriests were represented by the same counsel throughout their separate criminal proceedings.

The state offered a joint plea deal to the DePriests of 10 years' imprisonment with the possibility of probation if they successfully completed a program of shock incarceration under section 559.115. In response, defense counsel wrote a joint letter to the DePriests advising them both not to take the offer. In so doing, he acknowledged that the strength of the state's case against Natalie was much weaker than its case against David, stating: "I really do not see how the Prosecutor thinks he has any case against [Natalie] for cultivation. Even the charge of possession against Natalie may be rather weak . . . ."

Defense counsel then filed motions to suppress evidence in both cases and requested a joint preliminary hearing at which to present those motions. In response, the state sent a letter to defense counsel withdrawing the earlier plea offer. Later, the state made a new joint plea offer, this time proposing 15–year sentences with the possibility of probation under section 559.115 for both David and Natalie. Defense counsel rejected this offer and proposed, instead, suspended impositions of sentence for both defendants. The state declined and stated that no further joint offers would be forthcoming.

David and Natalie were not incarcerated during these initial plea negotiations. During the negotiations, however, Natalie was charged with an unrelated misdemeanor for passing a bad check. Based on that charge, the state moved to revoke Natalie's bond in the present case. The state then sent defense counsel a plea offer for Natalie alone. The prosecutor offered Natalie a better deal if she would testify against her brother, at the same time noting that this created a conflict of interest

between counsel's representation of David and Natalie and that the state might move for disqualification, writing:

> [The state] will recommend 15 years pursuant to 559.115. [The state] will dismiss the other two counts against her. . . . However, should she not wish to accept the deal . . . [the state] will then be making an offer to you to have her testify against her brother and while you may assert that she does not wish to do so [the state] will also be filing a motion to disqualify you as you would not be able to successfully represent her and her brothers [sic] interest.

Defense counsel wrote Natalie and advised her not to accept this offer. Defense counsel recommended that Natalie instead continue pursuing a suspended imposition of sentence. Defense counsel also wrote to David and explained that he understood the state would reinstate Natalie's bond (pending sentencing) only if **both** DePriests pleaded guilty with 15–year sentences subject to the possibility of probation under section 559.115. Counsel did not withdraw, and the state did not seek to disqualify him.

In August 2013, the DePriests jointly pleaded guilty on counsel's recommendation. David pleaded guilty to all three counts (i.e., producing a controlled substance, possessing a controlled substance with intent to distribute, and unlawful possession of a weapon). Natalie, however, pleaded guilty only to the first two counts, and the weapons charge against her was dismissed. Both were "open" guilty pleas; the state had not agreed to binding or non-binding sentencing recommendations. At the plea hearing, the following exchange took place:

> Defense Counsel: David's plea is an open plea, except . . . that it was contingent on both defendants pleading guilty; in other words, the offer to Natalie was

contingent on David pleading guilty. So [David] is relying on the agreement in [Natalie's] case. There is no agreement as to disposition of his case.

Assistant Prosecuting Attorney: There is no plea bargain.

Trial Court: There is no plea bargain.

Assistant Prosecuting Attorney: [The prosecuting attorney] wanted both defendants dealt with. [He] wanted both defendants dealt with today.

Trial Court: Okay. That's what we're doing. But there is no—there is no plea bargain agreement. It's an open plea.

Assistant Prosecuting Attorney: With respect to David Depriest, right. With respect to Natalie Depriest—

Trial Court: Let's go to Natalie Depriest.

Assistant Prosecuting Attorney: With respect to Natalie Depriest's case, she's pleading open to Counts I and II. All other counts and case [sic] against her are dismissed. And as a side agreement, her bond, we'll agree that her bond can be reinstated [pending sentencing in the present case].

Later in the same hearing, the following exchange occurred:

Trial Court: Do you understand by my accepting your pleas of guilty, I am agreeing to be bound by the terms of your plea bargain agreements, which means, basically, if you have an agreement, which you two don't because you have open pleas, that I will be bound by the terms of the agreement?

David Depriest: [No Response.]

Natalie Depriest: [No response].

The DePriests pleaded guilty at a group plea hearing. The court entered guilty pleas for a total of seven defendants simultaneously. The court advised the seven defendants of their rights as a group and questioned them as a group. The court took their pleas moving down the line of defendants. It made no inquiry into the possibility of a conflict of interest due to counsel's joint representation of Natalie and David, although it was evident at the hearing that they were represented by the same counsel and received the same plea deal even though they played different roles in the crimes to which they pleaded guilty.

The trial court accepted both DePriests' pleas. At the sentencing hearing in November 2013, defense counsel argued that the court should suspend the impositions of sentence for both David and Natalie and place them both on probation. The state argued that David and Natalie should each receive the maximum prison sentences on all counts, with no possibility of probation under section 559.115. The trial court sentenced David and Natalie as recommended by the prosecutor to 15–year sentences on the first two counts, to be served concurrently. David received a seven-year consecutive sentence on the weapons count. Neither David's nor Natalie's sentence included the possibility of probation under section 559.115.

**Natalie's Rule 24.035 Motion**

Natalie's amended Rule 24.035 post-conviction motion alleges ineffective assistance of counsel because defense counsel continued to represent both her and David long after it became clear in the plea negotiations that there was an actual conflict of interest between them. Natalie further alleges this conflict adversely affected defense counsel's performance on her behalf by causing defense counsel not to seek a separate plea offer for her earlier in the negotiations despite the relative weakness of the evidence against her and by causing defense counsel to fail to "candidly and honestly advise Natalie about the wisdom of testifying against David, because of his duty of loyalty to David[.]"

In September 2014, the motion court denied Natalie's motion without an evidentiary hearing, stating:

... Movant cannot demonstrate what she "lost" by her representation by [defense counsel]. Nor can she say that she was unaware that he represented her brother, as they stood side by side throughout the case and at guilty plea. Finally, she cannot contend David got any advantage if there was any to be had, from the dual representation. Indeed, considering she was present when he received a harsher sentence, she must know he got no appreciable "advantage" at all. Movant merely hints at actions [defense counsel] could have taken were he not also representing her brother.

### David's Rule 24.035 Motion

David filed an amended Rule 24.035 motion that similarly alleges a conflict of interest on the part of defense counsel through counsel's continued joint representation after the actual conflict arose. David alleges the state exploited this conflict by making only joint plea offers, which forced David to reject those offers because accepting them (which he believed was in his interest) would have required Natalie to plead guilty on the same terms (which David believed was not in her interest). David also alleges defense counsel—acting solely in Natalie's best interest—pursued motions to suppress in both cases even though this resulted in the state withdrawing the initial joint plea offer, which would have been in David's best interest (if not Natalie's) to accept.

On October 22, the motion court overruled David's motion for post-conviction relief without an evidentiary hearing, reasoning:

Of course, since [David] was in fact informed of the fact the plea offer was withdrawn as the preliminary hearing proceeded, he cannot claim that right or privilege or opportunity was lost to him because of double dealing by [defense counsel]. It is worth noting that when the exchange was had between [defense counsel] and the prosecutor at the time of the preliminary hearing to the effect the prior plea was withdrawn, [David] did not protest ... It is also worth noting that his factual allegations in this claim all appear to point to the fact that his sister Natalie was less culpable than he and yet he elected to plead guilty without accepting a plea bargain. [David] alleges he did so because of his love for his sister and desire to spring her from jail, and the prosecutor had agreed to a bond for Natalie pending sentencing ... [a]ssuming that is so is not due to actions on [defense counsel's] part but rather [David's] loyalty and love for his sibling.

Both DePriests timely appealed the judgments overruling their respective motions. Although the appeals are not formally consolidated, this opinion addresses both cases due to the similarity of the issues raised and the resolution ordered by the Court. In so doing, it is not suggesting that the cases should or must be consolidated for purposes of evidentiary hearings on remand.

### Form of Amended Motions

The concurring opinions, *sua sponte*, discuss the view that amended post-conviction motions should follow the rules for petitions set out in Rules 55.05 and 55.11. This issue was neither briefed nor argued, is not necessary to the disposition of the case, is purely a statement as to the way in which the authors would prefer amended motions be organized and written, and has no impact of any kind on this Court's resolution of the case.

Had the issue been briefed, perhaps counsel would have noted that no case or rule provides that the rules governing initial pleadings apply to amended motions. Indeed, as their name indicates, by their nature post-conviction motions are intended to be filed as motions. They are subject, therefore, to the rules governing motions rather than petitions. Those rules provide more than adequate guidance for filing amended Rule 24.035 motions.

For instance, subsection (b) of Rule 24.035 provides that counsel may be appointed, and subsection (e) directs counsel that if the *pro se* motion "does not assert sufficient facts or include all claims known to the movant, counsel shall file an amended motion *that sufficiently alleges the additional facts and claims*" (emphasis added). If the Court intended the amended motion to follow the rules for petitions, this would have been the place to so state, but instead the remainder of Rule 24.035 is very general as to what is a sufficient allegation of facts and claims. Subsection (g) simply provides that "Any amended motion shall be signed by movant or counsel. The amended motion shall not incorporate by reference or attachment material contained in any previously filed motion . . . ."

Additional general guidance for the form of motions is provided by Rule 55.26. It provides:

> Written Motion—When Required. An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

These requirements of Rule 55.26, if followed, would meet Judge Wilson's concern in his concurring opinion that some amended motions are insufficiently detailed, and are more than sufficient to allow the court to discern clearly the bases on which a motion is brought and what relief is requested.

It must also be considered that, were Rule 55.05 and Rule 55.11 for filing petitions to apply to motions filed under Rule 24.035, then the parallel rules for filing an answer necessarily would apply, including Rule 55.07 concerning forms of denials, and Rule 55.09, which provides that any matters not denied would then be deemed admitted. This also begs the question whether the other subdivisions of Rule 55 would apply, such as those governing judgments on the pleadings, or whether the rules governing default judgments or summary judgment would also apply.

■ The purpose of this discussion is not to hold that post-conviction motions must comply with the requirements for other motions but rather to point out why opinions should not, and this opinion does not, reach out to decide an issue not briefed, and as to which there are numerous countervailing considerations.

## II. ACTUAL CONFLICT OF INTEREST

■ "Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). *See* Rule 24.035(k); Rule 29.15(k). Rule 24.035(h) and (j), as well as Rule 29.15(h) and (j), require the motion court to make written findings and conclusions whether or not it holds an evidentiary hearing.

■ Here, the motion court entered judgment denying each movant's claims based on findings and conclusions made

without an evidentiary hearing. Those judgments must be vacated and the cases remanded for evidentiary hearings, unless: (1) one or both movants failed to allege facts sufficient to justify post-conviction relief; or (2) the factual allegations of one or both movants, though sufficient to state a claim, are plainly and conclusively refuted by the record and files in the case. *Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003).* Rule 24.035(h); Rule 29.15(h).

■■■■ Both David and Natalie claimed that they were entitled to post-conviction relief because of ineffective assistance of counsel. Ordinarily, to state such a claim, the movant must allege facts, not mere conclusions, demonstrating: (1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and (2) that counsel's deficient performance actually prejudiced [3] the movant. *Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*

■■■■ The pleading requirements are quite different if the movant's claim of ineffective assistance of counsel is predi-

cated on an actual conflict of interest that arose during counsel's concurrent representation of multiple clients facing criminal charges arising out of the same set of facts and circumstances. A *potential* conflict of interest nearly always exists when one counsel represents two or more criminal defendants facing charges arising out of the same facts and circumstances. Such a potential, in and of itself, is not sufficient to render a guilty plea unknowing, involuntary, or unintelligent. *Krupp v. State, 356 S.W.3d 142, 147–48 (Mo. banc 2011).* But that changes if an actual conflict of interest exists. " '[A]n actual, relevant conflict of interests [arises] if, during the course of the [concurrent] representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action.' " *State v. Chandler, 698 S.W.2d 844, 848 n.11 (Mo. banc 1985), quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n.3, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)* (Marshall, J., concurring in part and dissenting in part).

■■■■ "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not

---

**3.** Ordinarily, to plead *Strickland* "prejudice," a movant must allege facts showing that—but for the constitutional deficiencies in counsel's performance—the outcome of the trial likely would have been different. In the context of a motion for post-conviction relief under Rule 24.035, however, ineffective assistance of counsel is "immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Cooper v. State, 356 S.W.3d 148, 153 (Mo. banc 2011).* Accordingly, a movant under Rule 24.035 can only satisfy the second *Strickland* element (i.e., prejudice) by alleging facts showing that—but for counsel's deficient performance—the movant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Coates v. State, 939 S.W.2d 912, 914 (Mo. banc 1997).* Such prejudice is presumed when the claim of ineffective assistance of counsel is based on

an actual conflict of interest that adversely affected the adequacy of the representation. *Cf. Missouri v. Frye, 566 U.S. 133, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012)* (holding when counsel's performance is deficient for failure to communicate a plea offer, prejudice—that it was likely that defendant would have accepted the offer, prosecution would not have withdrawn it, and the trial court would have approved it—must be proven). The concurring opinion of Judge Fischer suggests that the only prejudice here would be similar to that in *Frye*—a plea offer not communicated that would have been accepted. While that is the case as to the allegation that a plea would have been accepted, where, as here, the defendant also alleges a conflict of interest in other aspects of the representation and advice given, it is premature to state what the prejudice may be due to the lack of unconflicted advice about what pleas to seek or other matters related to the defense.

demonstrate prejudice in order to obtain relief." *Cuyler, 446 U.S. at 349–50*, 100 S.Ct. 1708. Prejudice is presumed, not only because the right to unconflicted counsel is an essential aspect of the Sixth Amendment right to counsel but also because a requirement that the movant plead and prove actual prejudice in the normal *Strickland* sense would be impossible to meet in most (if not all) cases in which counsel had an actual conflict of interest. As the Supreme Court explained:

> [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.

*Holloway v. Arkansas, 435 U.S. 475, 490–91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)* (emphasis in the original).

In their amended motions for post-conviction relief, David and Natalie both alleged they were denied effective assistance of counsel due to an actual conflict of interest. In overruling these motions without evidentiary hearings, the motion court stated in both cases: "To meet the prejudice standard Movant must allege facts showing there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." This is clear error.

When the movant demonstrates "a conflict of interest actually affected the adequacy of [counsel's] representation," prejudice is presumed. *Cuyler, 446 U.S. at 349, 100 S.Ct. 1708*.

The motion court similarly erred in both cases in relying on *Poole v. State, 825 S.W.2d 669, 673 (Mo. App. S.D. 1992)*, for the proposition that: "In order to evidence a conflict of interest, something must have been done by counsel in the trial, or something must have been foregone by counsel and lost to the accused, which was detrimental to the accused interests and advantageous to the one with antagonistic interests." *Poole* took this language from *State v. Johnson, 549 S.W.2d 348, 350 (Mo. App. 1977)*, citing *Mooring v. State, 501 S.W.2d 7, 11 (Mo. 1973)*; and *Mason v. State, 468 S.W.2d 617, 620 (Mo. 1971)* (finding that "to evidence a conflict of interest something must have been done by counsel in the trial, or something must have been foregone by counsel and lost to defendant, which was detrimental to the interests of defendant and advantageous to the interests of" another).

This formulation seems to have originated in *Mason*, which was persuaded that, in prior decisions finding ineffective assistance of counsel due to an actual conflict of interest, there had been a showing that the claimed conflict actually affected the defendant's representation at trial. *Mason, 468 S.W.2d at 621*. But the standard first articulated in *Mason* and repeated by later cases addressed only those situations in which an actual conflict of interest is claimed to have resulted in ineffective assistance of counsel *at trial*. None of the cases have applied this standard to allegations of a conflict of interest in a guilty plea, and use of that standard would be inappropriate in such cases, for:

> [O]nce the existence of a conflict of interest has been established a showing of

actual prejudice to the accused is not necessary since the right to counsel is too fundamental and absolute to allow courts to indulge in nice calculations arising from its denial. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Mason v. State*, 468 S.W.2d 617 (Mo. 1971); *Ciarelli v. State*, supra [441 S.W.2d 695 (Mo. 1969)]; *State v. Johnson*, supra. The State, while conceding the above principles, argues that under *Mason* and *Johnson*, supra, there must be evidence indicating a conflict of interest. . . .

*Ciarelli*, *Mason*, *Johnson*, and *Mooring*, supra, are all cases where the issue of ineffectiveness arose after trial and the alleged conflict of interest could be examined in the light of counsel's performance at trial. . . . **When the claim as it is here consists of ineffectiveness of counsel insofar as it affects the voluntariness of the plea, the concept of proof of forebearance of a defense or the doing of an act detrimental to the defendant is not capable of review on the record.** The advice of counsel and its effect on the defendant insofar as that advice affects the voluntary nature of his plea are not as easily determined absent the record which exists at a trial.

This is precisely what the Supreme Court of the United States addressed in *Holloway v. Arkansas*, supra at 490, 98 S.Ct. 1173. The Supreme Court pointed out that when the conflict occurs in the context of plea negotiations and proceedings or a plea of guilty, no rational examination of the actual conduct of the attorney is possible.

*LaFrance v. State*, 585 S.W.2d 317, 321–22 (Mo. App. W.D. 1979) (emphasis added).

▬▬ This Court agrees with *LaFrance*. The *Mason/Mooring* standard is

not applicable when a movant seeks post-conviction relief on the ground that an actual conflict of interest arising from concurrent representations resulted in ineffective assistance of counsel in pleading guilty. A movant has a right to conflict-free counsel in the course of pleading guilty.

Rather than applying the *Mason/Mooring* standard in such situations, this Court has repeatedly stated that a movant need only show an **actual** conflict of interest, meaning one that "adversely affected counsel's performance." *State v. Roll*, 942 S.W.2d 370, 377 (Mo. banc 1997). For a proper understanding of what is meant by "adversely affected," the Court looks to *Cuyler*, from which the requirement that an alleged conflict of interest must have "adversely affected counsel's performance" originates. There, the Supreme Court stated:

> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial **must demonstrate that an actual conflict of interest adversely affected his lawyer's performance** . . . . Thus, a defendant who shows that a **conflict of interest actually affected the adequacy of his representation** need not demonstrate prejudice in order to obtain relief. See *Holloway*, supra, 435 U.S. at 487–491, 98 S.Ct. 1173. But until a defendant shows that his **counsel actively represented conflicting interests**, he has not established the constitutional predicate for his claim of ineffective assistance.

*Cuyler*, 446 U.S. at 348–50, 100 S.Ct. 1708 (emphasis added) (footnotes omitted). *See also Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) ("[T]he [*Cuyler*] standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual con-

flict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.").

■ Accordingly, when the movant seeks post-conviction relief following a plea of guilty, this Court holds that the movant must plead facts from which the motion court could find that counsel acted under an actual—not merely potential—conflict of interest that adversely affected the adequacy of counsel's representation. *See Strickland, 466 U.S. at 692, 104 S.Ct. 2052, quoting Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. Accord, Amrine v. State, 785 S.W.2d 531, 535 (Mo. banc 1990); Chandler, 698 S.W.2d at 848–49.* If so, the movant is entitled to an evidentiary hearing at which the movant will bear the burden of persuading the motion court that the alleged facts are true, that they demonstrate an actual conflict of interest, and that they reasonably support the inference that counsel's representation of the movant was adversely affected.

Though it is difficult at times to extract the precise factual allegations in the De-Priests' motions from their surrounding inferences and arguments, both amended motions set forth sufficient facts showing that their joint defense counsel acted under an actual (not merely theoretical) conflict of interest that adversely affected counsel's representation of each defendant. Even though both motions allege numerous facts and circumstances in support of this conclusion, only a few of them need be highlighted here. First, the motions allege that defense counsel acknowledged, almost from the beginning of the joint representation, that he believed the evidence of David's guilt was strong but that the evidence of Natalie's guilt was weak or nonexistent. Despite this perceived asymmetry, the motions allege that the initial plea offers from the state tendered the same terms (at least with respect to the first two

counts) to both defendants and that these offers were contingent upon acceptance by both defendants.

The motions further allege that defense counsel did not advise David to accept these initial offers, as David contends unconflicted counsel would have done. Instead, both motions allege that defense counsel advised David and Natalie, jointly, that neither should accept the terms because counsel believed the evidence against Natalie was far less compelling than the evidence against David. The motions allege that the state exploited defense counsel's conflict of interest by continuing to propose plea offers only on a "both or neither" basis and that defense counsel never sought to "uncouple" these offers until late in the negotiation process. Even then, the motions allege the state sought to leverage counsel's conflict of interest by threatening to have defense counsel disqualified so the state could offer Natalie more favorable terms in exchange for testimony against David. These allegations, together with the remainder of the allegations in the two motions, would—if proved to and believed by the motion court in an evidentiary hearing—be sufficient for the motion court to conclude that defense counsel had an actual conflict of interest and that this conflict adversely affected counsel's representation of David and Natalie.

■ The state contends these allegations do not necessarily prove an actual conflict of interest and, even if they did, the conflict did not adversely affect counsel's representation of either DePriest. The state argues that some of the allegations are not true or cannot be proven. But the question is not whether David or Natalie (or both) is entitled to relief but whether each of them is entitled to an evidentiary hearing and an opportunity to persuade the motion court that each is entitled to

relief on this claim. At the hearing, the state is free to argue why it does not believe they are entitled to relief. But neither the motion court nor an appellate court is permitted to decide which facts to believe or what inferences to draw in ruling on a post-conviction motion without an evidentiary hearing. If the motion pleads sufficient facts and reasonably supports sufficient inferences to justify post-conviction relief, the movant is entitled to an evidentiary hearing. The motion court is justified in overruling a sufficiently pleaded motion without an evidentiary hearing only when the record and files of the case plainly and conclusively refute the allegations in the motion and demonstrate the movant is entitled to no relief. *Roberts v. State*, *276 S.W.3d 833, 837 (Mo. banc 2009)*. Nothing in the records or files of either case so refutes the conflict of interest claim in David's or Natalie's motion.

It bears noting that, when David and Natalie appeared to plead guilty (and, later, to be sentenced), the trial court had an opportunity to inquire as to whether an actual conflict of interest had arisen and whether any such conflict had adversely affected counsel's representation of one or the other (or both) of the defendants. The trial court never conducted such an inquiry, however, and the DePriests' only remedy now is to raise a claim of ineffective assistance of counsel under Rule 24.035. *See State v. Nettles*, *481 S.W.3d 62, 70 (Mo. App. E.D. 2015)*.[4] Having alleged sufficient facts to state such a claim, neither David nor Natalie can be denied an eviden-

tiary hearing based on what the motion court believes the earlier hearing (had it been held) would have shown.

David and Natalie entered their guilty pleas as part of a larger, "group" plea. As this Court noted in *Roberts, 276 S.W.3d at 836 n.5*, group pleas are fraught with unnecessary risk and should be avoided. It cannot be known—and does not matter—whether the use of this discredited practice is to blame for the trial court's failure to react to the obvious possibility that an actual conflict of interest existed between David and Natalie and that this conflict might have adversely affected defense counsel's ability to represent either of them (let alone both of them) adequately. The possibility that the group plea procedure contributed to the trial court's failure to inquire into and make findings about these issues on the record, however, should be added to the long and growing list of reasons why this practice should be consigned to judicial history.

### III.  CONCLUSION

For the reasons just discussed, the judgments are vacated and both cases are remanded to the motion court for further proceedings consistent with this opinion.

Breckenridge, C.J., Stith, Draper and Russell, JJ., concur;

Fischer, J., concurs in separate opinion filed; Wilson, J., concurs in separate opinion filed.

---

4. *Nettles* explains that "Missouri [post-conviction procedure] provides a framework to determine whether an attorney's conflict of interest gives rise to a claim of ineffective assistance of counsel .... Nettles has the same opportunity as the defendants [in prior Supreme Court cases] to prove an actual conflict existed that adversely affected [counsel's] performance in a post-conviction hearing. If Nettles produces such evidence, the motion court must presume *Strickland* prejudice and grant his claim of ineffective assistance of counsel." *Nettles, 481 S.W.3d at 70.* As noted *supra*, the fact that this case involves a conflict of interest rather than a mere failure to pass on an offered plea means that the range of prejudice is broader than in *Frye*, discussed by Judge Fischer's concurring opinion.

Zel M. Fischer, Judge

## CONCURRING OPINION

The per curiam holds that when a movant seeks post-conviction relief pursuant to Rule 24.035, that movant must plead facts from which the motion court could find that plea counsel labored under an actual—not merely potential—conflict of interests that adversely affected the adequacy of plea counsel's representation. If the movant does so, the movant is entitled to an evidentiary hearing at which the movant will bear the burden of persuading the motion court that the alleged facts are true, that they demonstrate an actual conflict of interests, and that plea counsel's representation of the movant was adversely affected. When the facts pleaded allege an actual conflict, prejudice is presumed.[1] I concur with the per curiam's conclusion that, because the DePriests' amended motions each satisfied this standard, the motion court clearly erred in overruling their motions without an evidentiary hearing.[2] While the presumption of prejudice that results from pleading an actual conflict of interests may relieve a movant from pleading how the movant was prejudiced in this context, the State may rebut the presumption that one or both of the DePriests were prejudiced at the evidentiary hearing on remand.[3]

---

1. To the extent the per curiam relies on *State v. Nettles*, 481 S.W.3d 62 (Mo. App. 2015) in footnote 4 for illustrative purposes in applying a presumption of prejudice pursuant to *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), it is significant that, in *Nettles*, the court of appeals was not addressing a procedure to be used at an evidentiary hearing to determine if an actual conflict of interests existed or if prejudice had been demonstrated. Instead, the issue addressed, and the holding of *Nettles*, was that a claim of ineffective assistance of counsel based on an actual conflict of interests in a dual-representation scenario at trial, "is not cognizable on direct appeal and must be raised in a post-conviction motion." *Id.* at 71.

2. I too, however, agree with Judge Wilson's concurring opinion that the pleading requirements in Rule 55 enhance or have a neutral effect on the purposes of Rule 24.035 (or Rule 29.15), *Green v. State*, 494 S.W.3d 525, 531 (Mo. banc 2016), and, therefore, should govern the format of the DePriests' amended motions. However, because the State failed to raise this pleading issue here, I decline to address whether the DePriests' failure to conform to the pleading rules should have independently resulted in overruling their separate Rule 24.035 motions without an evidentiary hearing.

3. "[T]he term 'presumption' is used to describe different types of evidentiary devices used in criminal and civil cases." *Tupper v. City of St. Louis*, 468 S.W.3d 360, 370–71 (Mo. banc 2015). In Missouri, there are both irrebuttable and rebuttable presumptions. An irrebuttable presumption is one that "establishes a fact such that it cannot be overcome by additional evidence or argument." *Id.* A rebuttable presumption is one in which "[t]he amount of evidence that must be presented by the [State] to rebut the presumption affects whether the presumption shifts only the burden of production or shifts the ultimate burden of persuasion." *Id.* A presumption may "place[ ] the burden of producing substantial evidence to rebut the presumed fact on the party against whom the presumption operates." *Deck v. Teasley*, 322 S.W.3d 536, 539–40 (Mo. banc 2010). "When substantial evidence is produced rebutting the presumed fact, the case is decided on the basis of the evidence as if no presumption existed." *Id.* "In other words, when a presumption is rebutted, it disappears from the case and the fact-finder receives the issue free from any presumption." *Id.* "However, the facts that gave rise to the presumption remain in the case and along with the facts to the contrary, are considered by the fact-finder like any other evidence." *Id.* "To decide whether a presumption is rebutted, [t]he trial judge need only determine that the evidence introduced in rebuttal is sufficient to support a finding contrary to the presumed fact." *Id.* (internal citation and quotation marks omitted). "In Missouri, the quantum of proof generally required to rebut a presumption is 'substantial evidence.'" *Id.* "In the context of presump-

To prove an ineffective assistance of counsel claim based on the allegation of an actual conflict of interests in the plea-bargaining context, each movant must show not only that an actual conflict of interests adversely affected the adequacy of plea counsel's performance, but also that each movant suffered prejudice—i.e., that there was "a reasonable probability that he [or she] would have accepted the lapsed plea [and] a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." *Missouri v. Frye*, 566 U.S. 133, 150, 132 S.Ct. 1399, 1410–11, 182 L.Ed.2d 379 (2012). In *Frye*, the Supreme Court of the United States explained:

> [W]here a defendant **pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer**, *Strickland*'s inquiry into whether "the result of the proceeding would have been different," requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed.
>
> . . . .
>
> . . . If . . . the prosecutor **could have canceled the plea agreement**, and if Frye fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice. Likewise, if the trial court **could have refused to accept the plea agreement**, and if Frye fails to show a reasonable probability the trial court

would have accepted the plea, there is no *Strickland* prejudice.

*Id.* (emphasis added) (internal citation omitted). The per curiam opinion suggests that "the fact that this case involves a conflict of interest rather than a mere failure to pass on an offered plea means that the range of prejudice is broader than in *Frye*." Op. at 18 n.4 (per curiam). But the Supreme Court of the United States in *Frye* made clear what must be pleaded and proved in all cases in which the **plea offer lapsed or was rejected** based on a claim of ineffective assistance of counsel. The Supreme Court held:

> To show prejudice from ineffective assistance of counsel **where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate** a **reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.** Defendants must also demonstrate a **reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.**

*Frye*, 566 U.S. at 147, 132 S.Ct. at 1409 (emphasis added).

If the motion court vacates one or both guilty pleas after holding an evidentiary hearing, the DePriests would have the option of either pleading guilty or demanding a trial. Even then, the State is under no obligation to offer the DePriests a new plea agreement, *id.* at 148, 132 S.Ct. at 1410 ("[A] defendant has no right to be offered a plea."), let alone reoffer the De-

---

tions, this Court has held that 'substantial evidence' is evidence which, if true, has probative force upon the issues, i.e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them[.]" *Id.* (internal citations and quotation

marks omitted). Here, the presumption that arose when an actual conflict of interests adversely affected the adequacy of plea counsel's representation is rebuttable by the State producing evidence that the movant was not prejudiced.

Priests the initial plea agreements that were each withdrawn when the DePriests decided to reject both and proceed with their preliminary hearings. *See, e.g., Frye v. State,* 392 S.W.3d 501, 506 (Mo. App. 2013) ("[A]s a general rule, Missouri law permits the State discretion to withdraw a plea offer, even an accepted plea offer, at any time prior to the offer's acceptance by the trial court."); *see also State v. Copeland,* 928 S.W.2d 828, 840 (Mo. banc 1996), *overruled on other grounds by Joy v. Morrison,* 254 S.W.3d 885 (Mo. banc 2008) ("The general rule is that unless a plea agreement is embodied in the judgment of a court, a breach of such agreement by the state does not deprive an accused of liberty or any other constitutionally protected interest.").

Further, even if the State offers each DePriest a plea agreement, the circuit court is not required to accept it. *See, e.g., State v. Hall,* 955 S.W.2d 198, 202 (Mo. banc 1997) ("There is no absolute right to have a guilty plea accepted by the trial court, even when the State and the defendant have reached an agreement and have presented it to the court in writing."); Rule 24.02(d)(2), (4).

Paul C. Wilson, Judge

### CONCURRING OPINION

I concur in the Court's opinion, but write separately to emphasize that—in order to reach this result—the Court was required to parse the amended motions in both cases far more than it should have to have done, and far more than the best interests of David and Natalie DePriest should have required.

After the DePriests filed separate *pro se* motions under Rule 24.035, their separate post-conviction counsel filed lengthy amended motions to supplement, refine and restate the DePriests' claims. However, the clarity and precision that is the goal of amended motions under Rule 24.035(e) (and Rule 29.15(e)) was lost in the form and style employed by counsel in drafting those motions. As in most post-conviction cases, the DePriests' counsel failed to follow the requirements of Rule 55 concerning the form and style of civil pleadings, adopting instead the informal form and style of their clients' *pro se* motions. As a result, lengthy narrative-style recitations of facts (freely mixed with legal conclusions) appear not merely once in each motion, or even once for each distinct claim in each motion, but many times throughout each motion. Interspersed between and among these more-or-less factual recitations are detailed legal arguments and citations that are far better suited to briefs or memoranda than to a critically important pleading such as an amended motion under Rule 24.035(e) (and Rule 29.15(e)).

To be sure, when filing the initial motion, Rule 24.035(b) explicitly requires the movant to follow substantially the format in Criminal Procedure Form 40. Because such motions are most often filed *pro se,* this form is designed to make it easy for a prisoner to identify all claims and supporting facts that he or she wishes to assert. But nothing in Rule 24.035 (or Rule 29.15) requires—or even suggests—that appointed or retained counsel must or even should follow this same form and style when preparing an amended motion. Instead, Rule 24.035(a) provides that ordinary civil rules should apply where not inconsistent with Rule 24.035. As a result, amended motions should comply with the generally applicable rules governing pleadings. *See, e.g.,* Rule 55.05 (any "pleading that sets forth a claim for relief . . . shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled"); Rule 55.11 (all "averments . . . shall be made in numbered paragraphs, the con-

tents of each of which shall be limited as far as practicable to a statement of a single set of circumstances").

As this Court recently held, "in determining whether a rule of civil procedure applies in a post-conviction proceeding, this Court focuses on whether the rule enhances, conflicts with, or is of neutral consequence to Rule [24.035]." *Green v. State*, 494 S.W.3d 525, 531 (Mo. banc 2016) (internal citation and quotation marks omitted). Accordingly, if the ordinary pleading requirements in Rule 55 enhance the purposes of Rule 24.035, or at least do not impede those purposes, then those requirements apply to amended post-conviction motions.

When read together, the pleading requirements in Rule 55 plainly enhance the purposes of Rule 24.035 (and Rule 29.15). Unlike an unrepresented inmate, appointed or retained post-conviction counsel are presumed to be thoroughly familiar with these rules. Adherence to the requirements of Rule 55 when preparing amended motions under Rule 24.035(e) (or Rule 29.15(e)) also enhances the orderly presentation of claims that is the central purpose for those amended motions. Moreover, this more orderly presentation will help ensure that any response from the state will be thorough and complete. Finally, it will guide courts in making sufficient findings and conclusions on all of the issues presented and properly disposing of the movant's claims. *See* Rule 24.035(j); Rule 29.15(j).

The state did not argue in the motion court that one or both of these amended motions should be overruled because counsel failed to comply with Rule 55, nor do I suggest that these motions now should be overruled on that basis. I concur in the Court's *per curiam* opinion because I believe that the substantive pleading requirements set forth in the *per curiam* opinion

are correct and because—after close study—I believe these amended motions meet those standards (if only barely, in Mr. DePriest's case). It should be noted, however, that this result comes despite the form and style of those motions. As set forth above, I believe Rule 55 compels post-conviction counsel to take a more orderly approach in drafting amended motions under Rule 24.035 (and Rule 29.15). Moreover, even if Rule 55 does not compel post-conviction counsel to take this approach, post-conviction clients would be better served if their counsel did so.