LAURA DENVIR STITH, JUDGE
Charles Ryan appeals the motion court's judgment overruling his Rule 24.035 motion without an evidentiary hearing. He alleges his plea was involuntary because counsel did not inform him of a change in the plea offer until just before the plea hearing, did not meet with him to discuss the case prior to the plea hearing, and put undue pressure on him to accept the plea offer. This Court affirms, finding the record conclusively refutes the claims made in Mr. Ryan's motion.
*153 I. FACTUAL AND PROCEDURAL BACKGROUND
In August 2011, Mr. Ryan pled guilty to second-degree drug trafficking and was sentenced to 15 years' imprisonment. The court placed him in a long-term drug treatment program in the department of corrections pursuant to section 217.362.[1] Upon successful completion of the program, he was eligible to have execution of his 15-year sentence suspended and to be released on probation. Id.
In August 2012, while Mr. Ryan was taking part in the long-term drug treatment program at the department of corrections, the State brought charges against him for manufacturing a controlled substance in a separate incident that occurred prior to the trafficking conviction. The initial charge alleged Mr. Ryan had committed the class A felony of manufacturing a controlled substance within 2,000 feet of a school under section 195.211.2.[2] In September 2012, the prosecutor reduced the charge to manufacturing a controlled substance, a class B felony under section 195.211.3, to which Mr. Ryan agreed to plead guilty in exchange for the State's recommendation of a suspended 15-year sentence and five years' probation.
Mr. Ryan says the initial plea offer included a promise by the prosecutor to recommend the new sentence run concurrent with his 15-year trafficking sentence. But the morning of the plea hearing, the prosecutor withdrew that offer and said he would instead recommend the two sentences run consecutively. Mr. Ryan says his attorney recommended he take the revised plea offer because, otherwise, there would be a chance the prosecutor would proceed with the higher charge initially filed, risking a much harsher sentence.
Mr. Ryan agreed to plead guilty pursuant to the revised plea offer despite his knowledge the prosecutor was going to recommend his sentence be made consecutive to his trafficking sentence. He and six other defendants in unrelated cases participated in a group plea proceeding. No defendant or attorney objected to the group plea procedure. The court advised the seven defendants of their rights and asked questions generally to the group. Each defendant stood in a line and answered the questions individually. In addition to the general questions, the court at various points asked specific questions to individual defendants to more effectively determine whether their pleas were knowing, intelligent, and voluntary. The court accepted Mr. Ryan's plea and imposed a suspended 15-year sentence consistent with the recommendation, to run consecutively to his 15-year sentence for trafficking, and put him on five years' probation. A few months later, Mr. Ryan successfully completed the long-term drug treatment program in which he was serving pursuant to his trafficking conviction, and the court ordered his release on probation.
In September 2014, Mr. Ryan violated the conditions of his release on both convictions. The court revoked his probation and executed his previously suspended consecutive 15-year sentences for both *154 convictions. Mr. Ryan filed a Rule 24.035 motion challenging only his conviction in 2012 for drug manufacturing.[3] The motion court appointed counsel for Mr. Ryan, who filed an amended motion asserting Mr. Ryan's plea counsel was ineffective for inducing an involuntary guilty plea by: (1) informing Mr. Ryan of a change in the State's offer only minutes before he entered his plea, (2) failing to discuss the facts of the case with Mr. Ryan before the plea, and (3) intimidating Mr. Ryan into accepting the revised plea offer by saying he would receive a harsher sentence if he did not accept the State's revised offer.
The motion court overruled Mr. Ryan's motion without an evidentiary hearing on the ground the record conclusively refuted his claims, in that "[t]hroughout the record of [Mr. Ryan's] guilty plea he unequivocally assured the Court he was satisfied with the efforts of his attorney." Mr. Ryan's sole point on appeal is that, when looking at the totality of the circumstances, including that his plea was part of a group plea, the record does not conclusively refute the claims in his amended motion. He requests this Court vacate the conviction or, in the alternative, remand for an evidentiary hearing. For the reasons set forth below, this Court affirms.
II. STANDARD OF REVIEW
When reviewing the motion court's denial of postconviction relief, this Court "is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." DePriest v. State , 510 S.W.3d 331, 337 (Mo. banc 2017). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." Price v. State , 422 S.W.3d 292, 294 (Mo. banc 2014).
III. THE RECORD CONCLUSIVELY REFUTES COERCION OR A FAILURE TO TIMELY COMMUNICATE A PLEA OFFER
To be entitled to postconviction relief due to ineffective assistance of counsel, "a movant must demonstrate that: (1) defense counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." McIntosh v. State , 413 S.W.3d 320, 324 (Mo. banc 2013), citing, Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To be entitled to an evidentiary hearing, (1) the movant must allege "facts, not conclusions, warranting relief; (2) the facts alleged [must] not [be] refuted conclusively by the record; and (3) the matters complained of [must have] resulted in prejudice to the movant." Id. at 323-24. The "prejudice[ ] requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Coates v. State , 939 S.W.2d 912, 914 (Mo. banc 1997) (quotations omitted). This requires the movant to show, "but for the errors of counsel, he would not have pleaded guilty, and he would have insisted on a trial." Hagan v. State , 836 S.W.2d 459, 464 (Mo. banc 1992).
Mr. Ryan alleges his plea was involuntary because the totality of the circumstances surrounding his plea hearing caused him to feel pressured and coerced *155 into pleading guilty. He notes the State initially offered to recommend a concurrent 15-year sentence in exchange for his guilty plea, and his counsel failed to notify him until just before the plea hearing that the State had withdrawn the offer and instead would recommend only a consecutive 15-year sentence. He says he should have been informed of this change sooner. He also alleges counsel pressured him just before the plea hearing by telling him if he choose not to accept the plea offer he could possibly receive a very harsh or maximum sentence, potentially under the originally charged class A felony of manufacturing a controlled substance within 2,000 feet of a school. Mr. Ryan alleges the last-minute nature of this change in the prosecutor's offer, combined with the intimidation he felt by being threatened with a harsher sentence should he refuse to agree to the revised offer, took him by surprise and contributed to the undue pressure he felt to plead guilty. He alleges that, had counsel informed him earlier about the change in the plea deal, he would not have accepted it. He claims counsel was ineffective for failing to inform him earlier and for trying to scare him into accepting the consecutive sentence offer.
It is counsel's obligation to "make a meaningful attempt to inform the defendant of a written plea offer before the offer expire[s]." Mo. v. Frye, 566 U.S. 134, 149, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Mr. Ryan acknowledges his counsel informed him of the initial plea offer. Mr. Ryan had not yet accepted the initial plea offer when the prosecutor withdrew it and made a new offer recommending his sentences be served consecutively. Mr. Ryan does not allege any impropriety in these events, nor could he do so. See Stokes v. State , 688 S.W.2d 19, 22 (Mo. App. 1985) ("We know of no duty imposed upon a prosecutor to keep a plea bargain open for any length of time."). He alleges only that counsel was tardy in passing on the revised plea offer.
But counsel cannot pass on an offer until counsel is informed of the offer. Mr. Ryan does not allege the State informed his counsel of the revised offer before the day of the plea hearing, and the record contains no facts supporting such an allegation. The insinuation that counsel nonetheless should have informed Mr. Ryan of the plea sooner, therefore, is, at best, speculation unsupported by facts and does not warrant an evidentiary hearing. See McIntosh , 413 S.W.3d at 323-24.
Similarly, Mr. Ryan's claim his counsel coerced him into pleading guilty does not merit relief. In support of this claim, Mr. Ryan asserts only that counsel told him if he did not take the revised deal, including agreeing to a consecutive sentence, then he risked an even harsher sentence because the prosecutor could proceed on the initial charge of manufacturing a controlled substance within 2,000 feet of a school, rather than the reduced charge of manufacturing a controlled substance. It was counsel's obligation to inform Mr. Ryan of the change in the plea offer, however, and to tell him the consequences he risked if he decided to reject the plea and go to trial. Frye , 566 U.S. at 149, 132 S.Ct. 1399. Mr. Ryan does not claim counsel misinformed him of the potentially harsh sentence he would risk if he did not take the plea deal and went to trial. He merely argues the discussion about a harsh alternative to pleading guilty added to the pressure he was already experiencing from the last minute change in the plea deal. That may well be the case, but the pressure he experienced was a direct result only of his own crimes and the prosecution's last-minute change in its offer, not of his counsel's accurately informing him of the sentence he risked if he rejected the plea offer and went to trial.
*156 Finally, Mr. Ryan claims the first time he spoke to his counsel concerning this case was "in court only minutes before he would stand before the court to enter a plea." Mr. Ryan claims, prior to the hearing date, his counsel merely relayed all communications to Mr. Ryan through Mr. Ryan's mother. He asserts this made him feel unprepared for his plea hearing and claims this lack of consultation contributed to the pressure he felt to plead guilty, rendering his plea involuntary.
As this Court previously has noted, "factual statements made by the defendant in the sentencing proceeding may later refute certain claims of ineffective assistance of counsel" so long as "the questions asked and the responses to them [were] specific enough to refute conclusively the movant's allegations." State v. Driver , 912 S.W.2d 52, 56 (Mo. banc 1995). That is the case here. At the guilty plea hearing, the judge asked Mr. Ryan whether he had met with counsel to discuss the case. Mr. Ryan specifically stated he and counsel discussed the case for nearly four hours over 10 different meetings prior to the plea hearing. Mr. Ryan further agreed he was "fully satisfied with the advice and counsel of [his] attorney in regard to this case," and had no "complaints whatsoever to make about [his] attorney's handling of the case." Mr. Ryan's statements conclusively refute his allegation that counsel failed to discuss the case with him prior to the plea hearing.
Mr. Ryan further argues even if his allegations would not otherwise show ineffective assistance of counsel, the fact his plea was part of a group plea should be a dispositive factor. This Court long has discouraged the use of group pleas and has held, when properly brought to the attention of a motion court, the existence of a group plea may be a relevant factor in determining whether a plea is entered voluntarily and an evidentiary hearing is required. DePriest, 510 S.W.3d at 342. But this Court has rejected claims that the mere fact a plea was made in a group setting in itself makes the plea involuntary or provides a basis for postconviction relief. Id. , citing, Roberts v. State , 276 S.W.3d 833, 836 n.5 (Mo. banc 2009). Mr. Ryan, therefore, alternatively argues this Court should hold the group nature of a plea is at least sufficient to raise a factual issue as to the voluntariness of the plea and should itself entitle the movant to an evidentiary hearing. Mr. Ryan cites no published authority for this argument, and the single unpublished citation he offers is not precedential. See Miller v. State , 2016 WL 2339049, at *4 (Mo. App. May 3, 2016), transferred and dismissed by Miller v. State , SC95805 (Mo. banc May 5, 2017). In any event, he did not include this attack on the voluntariness of group pleas or his suggestion they require an evidentiary hearing in his postconviction motion, and "any allegations or issues that are not raised in the [postconviction] motion are waived on appeal." Johnson v. State, 333 S.W.3d 459, 471 (Mo. banc 2011) ; see also State v. Nunley , 980 S.W.2d 290, 292 (Mo. banc 1998) ("Claims not presented to the motion court cannot be raised for the first time on appeal"). A "motion court could not have erred in failing to grant relief based upon an allegation that was not presented as a ground for relief." Coates , 939 S.W.2d at 915, citing, Griffin v. State , 794 S.W.2d 659, 664-65 (Mo. banc 1990).
IV. CONCLUSION
For these reasons, judgment is affirmed.
Fischer, C.J., Wilson, Russell, Powell and Breckenridge, JJ., concur; Draper, J. dissents.

All statutory references are to RSMo Supp. 2011, unless otherwise noted. Section 217.362.1 creates an "intensive long-term program for the treatment of chronic nonviolent offenders with serious substance abuse addictions." Section 217.362.2 provides "if an offender is eligible and there is adequate space, the court may sentence a person to the program which shall consist of institutional drug or alcohol treatment for a period of at least twelve and no more than twenty-four months, as well as a term of incarceration."

In 2014, section 195.211 merged into section 579.055 and the legislature reduced manufacturing a controlled substance within 2,000 feet of a school to a class B felony.

Mr. Ryan's time for challenging his trafficking conviction began running upon his delivery to the department of corrections for long-term drug treatment "on or about September 2011." He acknowledges the time to file a post-conviction motion as to this conviction had long expired by the time his probation was revoked in 2014.