

# In the
# Missouri Court of Appeals
## Western District

**STATE OF MISSOURI,**
        **Respondent,**

                                       **WD84804**
                           **OPINION FILED:**
                                **April 4, 2023**

**v.**

**DAVID A. HARRIS,**
        **Appellant.**

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Jennifer Marie Phillips, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Alok Ahuja, Judge and
Christopher K. Limbaugh, Special Judge

David A. Harris ("Harris") appeals the judgment of the Circuit Court of Jackson County, Missouri ("trial court") convicting him, following a jury trial, of one count of murder in the second degree, section 565.021;[1] one count of assault in the first degree, section 565.050, and two counts of armed criminal action, section 571.015.  Harris received

---

[1] All statutory references are to the Revised Statutes of Missouri (2016) as currently updated by supplement.

a total sentence of thirty-five years in the Department of Corrections. On appeal, Harris claims that the trial court plainly erred in failing to inquire about his trial counsel's conflict of interest and that the trial court erred in entering judgment against him because there was insufficient evidence that Harris committed either the offense of murder in the second degree or assault in the first degree and the accompanying respective counts of armed criminal action. We affirm the judgment of the trial court.

**Factual and Procedural Background**

On September 17, 2018, Mary Schmitz ("Schmitz") and her friend, James Coleman ("Coleman"), were at the apartment of Schmitz's friend, Chelsea Doss ("Doss"). Schmitz had been staying with Doss for a few weeks at the time. Coleman had been having issues with other individuals, Michael Lora ("Lora"), Darius Miller, and Appellant Harris. The issues among these four former friends all largely stemmed from arguments about various girlfriends. On the evening of September 18, 2018, Schmitz, Coleman, Doss, Doss's boyfriend, and another female acquaintance were all hanging out, drinking and smoking marijuana in Doss's apartment. At about 8:30 p.m., Coleman and Lora exchanged threatening texts. Lora also called the other female acquaintance over Facetime and told her to stay away from Coleman because "bad shit [was] coming for him," and he did not want her to get caught in the crossfire. The threatening texts Lora had sent to Coleman did not mention Appellant Harris by name, however Harris had previously at some point told Coleman that if he had had a bullet he would have fired it right then.

At some time in the early morning hours of September 19, 2018, Doss and her boyfriend heard gunfire. Doss stated that it sounded like two different guns firing. Doss

2

and her boyfriend hid in her closet in her bedroom and were later joined by the other female friend who had been asleep on Doss's living room sofa. Doss called 911. When the 911 operator told Doss that they could probably leave the closet, they opened the bedroom door and found Coleman, who had been shot, crawling toward them.

In the living room, Schmitz was not moving. The living room lights were on and the back door was open. Doss's dog, lying by the back door, had also been shot and killed.

The police found three .40-caliber cartridge casings on the sidewalk twenty-five feet from the rear of the apartment. In the apartment, there was one nine-millimeter cartridge casing near the dog. There were spent bullets on the living room floor; the dining room, where Coleman and Schmitz had been sleeping on an inflatable mattress; on the bedroom floor; and in the kitchen.

Police officers spoke with the surviving occupants of the apartment. Coleman, who had been shot, initially told officers there had been one shooter, a black male wearing all black. No one else claimed to have seen the shooters, and no one mentioned Harris.

At 4:20 a.m., someone called 911 to report a male walking about two miles from the crime scene. The man matched the description of a person seen leaving the crime scene. An officer drove to the area and found Harris, an eighteen-year-old black male wearing a black tee shirt, black shorts, and black shoes. Harris was sweating and had grass on his shoes, which were wet.

Harris was taken to the police station for questioning. The questioning was video recorded. Harris initially denied any involvement in the shootings and denied having been at the apartment. After having been read his *Miranda* rights, at about 8:30 p.m., detectives

3

reinitiated questioning. Eventually, Harris stated that he and another person went to the apartment; he had a nine-millimeter gun, and the other person had a Glock. Harris stated that he had not planned to use the gun, but that Coleman had grabbed for the gun and had pulled Schmitz in front of him as Harris was shooting. Harris had never intended for Schmitz to get hurt. Harris told the officers that he had thrown the gun into a wooded area. Harris took officers to the wooded area to look for the gun, but they could not locate it.

Police found a Glock pistol, a round of nine-millimeter ammunition, and a black do-rag in Lora's bedroom in his home. When Coleman was questioned again, he stated that there had been two shooters, one of whom was Lora, and the other was possibly Darius Miller or his friend Chris Eubanks.

The State filed a complaint against Harris on September 19, 2018. Attorney Michael Feeback ("Counsel") entered an appearance on Harris's behalf on October 15, 2018. Harris was indicted on November 30, 2018. In April of 2019, Counsel accepted employment with the Ray County prosecutor's office. On December 23, 2019, the prosecutors in Harris's case filed a motion asking the trial court to determine whether Counsel was prohibited from representing Harris under section 53.360 and Rule 4-1.7 of the Rules of Professional Conduct. Counsel withdrew from Harris's case on December 31, 2019. However, Counsel re-entered as counsel for Harris in February of 2021, and participated significantly in Harris's jury trial, which began on June 28, 2021.[2]

---

[2] Attorney Brian Costello also appeared on Harris's behalf and also participated in Harris's jury trial. Mr. Costello has since been suspended from the practice of law. *In re: Brian William Costello*, SC99542, March 28, 2022.

4

The jury found Harris guilty of second-degree murder for the killing of Mary Schmitz and of first-degree assault for the shooting of James Coleman and of two corresponding counts of armed criminal action. The jury recommended that Harris be sentenced to twenty-five years in prison for the murder, ten years in prison for the assault, and ten- and three-year terms for the respective counts of armed criminal action. The trial court ordered that the murder and assault sentences be served consecutively to each other but concurrent to the sentences for armed criminal action. This appeal follows.

**Counsel with Conflict of Interest**

Harris's first point on appeal is that the trial court plainly erred in neglecting its affirmative duty to conduct an inquiry into Counsel's participation in Harris's case when he had a conflict of interest about which the trial court reasonably should have known. There was no objection to Counsel's participation at trial, and this issue was not included in Harris's motion for new trial, so the issue is not preserved. Rule 29.11(d)[3] provides:

> In jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial except for questions as to the following:
>
> (1) Jurisdiction of the court over the offense charged;
> (2) Whether the indictment or information states an offense;
> (3) The sufficiency of the evidence to sustain the conviction.

Harris's first point on appeal is not one of the enumerated issues exempted by the Rule from the requirement that it be included in the motion for new trial to be preserved for

---

[3] All Rule references are to the Missouri Court Rules (2022).

appellate review. Thus, it may be reviewed, if at all, only for plain error.[4] Rule 30.20. However, clear and established Missouri precedent holds that claims such as Harris's are not suitable for review on direct appeal, but are more properly cognizable as claims of ineffective assistance of counsel, which can only be raised in Rule 29.15 motions. *State v. Nettles*, 481 S.W.3d 62, 67 (Mo. App. E.D. 2015); *State v. Celis-Garcia*, 420 S.W.3d 723, 730 (Mo. App. W.D. 2014).

As Harris points out, the right to conflict-free counsel is important and is protected by the Sixth and Fourteenth Amendments. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Wood v. Georgia*, 450 U.S. 261, 272 (1981). Section 56.360 and Missouri Rule of Professional Conduct 4-1.7, read in conjunction, prohibit prosecutors from representing criminal defendants, even making such representation a criminal offense on the part of the lawyer. Additionally, this conflict, because it is prohibited by law, is not waivable by the defendant. Rule 4-1.7(b). If Counsel was employed by the Ray County Prosecutor's Office during his representation of Harris, a serious breach of Harris's Sixth and Fourteenth Amendment rights is implicated. Also, Harris is correct that a trial court has an independent duty to inquire into conflicts of interest if it knows or reasonably should know that such a conflict exists. *Nettles*, 481 S.W.3d at 69-70 (citing *Cuyler*, 446 U.S. at 347). In this case, the trial court was made aware of Counsel's employment with the Ray County Prosecutor's office in December of 2019. Although Counsel withdrew from Harris's representation following the State's motion to disqualify him, he re-entered his appearance

---

[4] Harris urges the Court to review his claim *de novo*, arguing that the plain error standard would be "manifestly unjust" given the circumstances of this case. Because we follow the line of cases holding that claims such as Harris's first point are not cognizable on direct appeal, the standard of review is immaterial.

6

on Harris's behalf in February of 2021, and participated significantly in the jury trial on the underlying criminal offense, which began in June of 2021. Thus, the trial court had reason to know of the potential conflict of interest and had a duty to inquire.

We cannot determine on this record whether the trial court conducted any further inquiry into Counsel's possible conflict, or if the conflict even continued to exist at the time Counsel re-entered his appearance or at the time of the trial.[5] These are the types of factual issues that would appropriately be resolved in a hearing on a post-conviction motion. "In a post-conviction hearing, the movant may adduce additional facts relevant to defense counsel's actual conflict of interest rather than relying solely on a limited trial record." *Nettles*, 481 S.W.3d at 71. And while these issues could be resolved following an evidentiary hearing on remand from this Court following this appeal, Missouri law is well-established that the proper vehicle to raise this claim is a 29.15 motion alleging ineffective-assistance of counsel instead of raising a claim of trial court error on direct appeal.

*Nettles* set forth the historical treatment of these issues in Missouri courts, addressed both *Cuyler* and *Wood*, and concluded that they did not "transform Nettles's claim into one cognizable on direct appeal." *Nettles*, 481 S.W.3d at 69. In *Nettles*, similarly to this case, the trial court did have reason to know of counsel's potential conflict and presumably failed to inquire further into the conflict issue. *Id.* at 65. Nonetheless, the Court, citing *State v. Whitley*, 408 S.W.3d 305, 309-10 (Mo. App. E.D. 2013); *State v. Kezer*, 918 S.W.2d 874,

---

[5] Harris's brief maintains that the conflict persisted when Counsel re-entered the case in 2021, but there is no citation to the record to support this assertion. At argument Harris's counsel confirmed that the issue is unclear on this record further supporting a conclusion that this issue is more appropriately addressed following an evidentiary hearing pursuant to a rule 29.15 motion.

7

876-77 (Mo. App. E.D. 1996); and *Celis-Garcia*, 420 S.W.3d at 730, concluded that the issue was not properly framed as trial court error and was "in reality. . . a claim of ineffective assistance of counsel, [which] even if compelling, is not cognizable on direct appeal." *Nettles*, 481 S.W.3d at 68-69.

In *State v. Tate*, 572 S.W.3d 575 (Mo. App. E.D. 2019), the Eastern District of this Court was "invite[d]" to re-examine Missouri case law on this issue and rejected the invitation. *Id.* at 579. We agree with *Tate*, and affirm that a factual hearing on a Rule 29.15 motion is the appropriate vehicle to resolve the factual issues regarding the potential conflict of interest and the trial court's inquiry, knowledge, and handling of the potential conflict, and see no reason to depart from the long line of Missouri precedent deciding the issue. Accordingly, Harris's first point on appeal is denied at this time.

**Sufficiency of the Evidence**

Harris's second and third points on appeal allege that the trial court erred in entering his convictions because there was insufficient evidence to support either the conviction for second-degree murder or the conviction for first-degree assault, and thus insufficient evidence to support the respective convictions for armed criminal action. We disagree, and since both of these points on appeal involve much of the same evidence and argument, we will address those points together for ease of analysis.

A claim that there is insufficient evidence to support a criminal conviction is always preserved for appellate review even if it is not raised as part of a motion for new trial. *State v. Webber*, 504 S.W.3d 221, 226 n.6 (Mo. App. W.D. 2016); *State v. Claycomb*, 470 S.W.3d 358, 361 (Mo. banc 2015); Rule 29.11(d). Moreover, these claims are reviewed

8

on the merits and not just for plain error. *Id.* at 362. "In reviewing a claim that there was not sufficient evidence to sustain a criminal conviction, this Court does not weigh the evidence, but rather, accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *Id.* (internal quotation omitted).

Harris claims that there is insufficient evidence to support his convictions because the State failed to prove beyond a reasonable doubt that Harris acted alone or in concert with another in the shooting of James Coleman and the shooting death of Mary Schmitz. Most of Harris's argument revolves around what he calls coercive police questioning and the inconsistencies between Harris's statements to officers and the other evidence. "[O]ut-of-court confessions, statements, or admissions by the accused are generally not admissible unless they are corroborated by independent evidence, either circumstantial or direct, showing the *corpus delicti* of the crime." *State v. Jones*, 427 S.W.3d 191, 196 (Mo. banc 2014) (internal quotation omitted). There was sufficient corroborating evidence to support the admissibility of Harris's statement: he admitted to using a nine-millimeter gun, and both Coleman and Schmitz where shot with a nine-millimeter gun; he knew Coleman, had a disagreement with him, and was found near the location of the shootings shortly after they occurred in the early morning hours; he was sweating when the officer encountered him; he was wearing black shorts, black shoes, and a black tee shirt, and Coleman told officers that the shooters were black males wearing all black. This is sufficient corroboration for the admission of the statement he gave to police.

The evidence, viewed in the light most favorable to the jury's verdict, is as follows.

9

Coleman, the only surviving eyewitness to the shootings, initially told officers that there was one shooter, a black male wearing all black clothing. Coleman later told police that there were two black male shooters, both wearing all black clothing. Doss, who lived in the apartment where the shooting occurred, and her boyfriend heard what sounded to be at least two different weapons fired in rapid succession. Harris, matching the description police received that the shooter was a black male wearing all black clothing, was found in the early morning hours wandering in the vicinity. Harris had been captured on video surveillance within two to three miles of the shooting within forty minutes after the shootings occurred. Harris was perspiring.

After hours of questioning, Harris told detectives that he was at the apartment with another individual, and he shot at Coleman and Schmitz with a nine-millimeter gun. His companion had a different weapon and both nine-millimeter and forty caliber shell casings and bullets were located at the scene. He said he left through the back door and fled on foot after having been left by the driver. Harris said that he had thrown the gun he used as far as he could into a wooded area. He said that Coleman made veiled threats to Harris, texting him Harris's own address where he lived with his mother and sister. He stated that Schmitz was not supposed to get hurt.

The most inculpatory evidence against Harris was his own statement and confession. On appeal, Harris reminds this Court that Harris was only eighteen years old when he was questioned by police and that he was questioned for nearly twelve hours. He also points to inconsistencies between Harris's statement and the physical evidence at the

10

crime scene and between Harris's statement and the witnesses' statements and testimony.[6] But according to our standard of review, we ignore the inconsistencies. We "accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences." *State v. Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008). Then, after viewing the evidence in the light most favorable to the prosecution, we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal quotation omitted).

The elements of second-degree murder are that the defendant "knowingly cause[d] the death of another person or, with the purpose of causing serious physical injury to another person, cause[d] the death of another person." Section 565.021. Here, Harris stated that he and his companion went to the apartment both armed with guns, and although Harris did not intend for Schmitz to get hurt, the jury could infer that he shot with the purpose of causing serious physical injury to Coleman resulting in Schmitz's death. Harris admitted to using a nine-millimeter gun, whereas his companion had a different weapon, and Schmitz was killed by bullets fired from a nine-millimeter gun. There was sufficient evidence for a jury to find that Harris committed every element of this offense.

The elements of first-degree assault are that the defendant attempt[ed] to kill or knowingly cause[d] or attempt[ed] to cause serious physical injury to another person."

---

[6] Many of the inconsistencies may be attributed to inherent weaknesses in eyewitness testimony; the fact that it was dark when the shootings occurred, and Coleman, the surviving witness, had been asleep when the shooting began; and Harris's own attempts to minimize his culpability. Irrespective of the justifications for the inconsistencies, our standard of review requires that we ignore any evidence that does not support the jury's verdict.

11

Section 565.050. Harris admitted to police that he knowingly shot at Coleman, and Coleman testified that he had to be hospitalized for a week following the shooting and that he had to have three surgeries including having a femur replaced by a rod inserted into his leg. The bullets that injured Coleman were also fired by a nine-millimeter gun. There is sufficient evidence from which a jury could find that Harris committed every element of this offense.

The elements of the two counts of armed criminal action are that the two substantive felony offenses listed above were committed "with, or through the use, assistance, or aid of a dangerous instrument or a deadly weapon." Section 571.015. Harris admitted that he used a nine-millimeter gun while his companion had a different weapon, and both nine-millimeter and forty caliber shell casings and bullets were located at the scene. The bullets injuring Coleman and killing Schmitz were fired from a nine-millimeter gun. There is sufficient evidence for a jury to find that Harris committed every element of the two counts of armed criminal action of which he was convicted.

The evidence against Harris was sufficient, when viewed under our standard of review, to support his convictions for all of the charges in this case. Harris's second and third points on appeal are denied.

**Conclusion**

For all of the above-stated reasons we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

12